Louise Ann Cappelen MURVILLE, Appellant,

v.

Dean M. MURVILLE, Appellee.

Dean M. MURVILLE, Appellant,

v.

Louise Ann Cappelen MURVILLE, Appellee.

Nos. 14094, 81–197.

District of Columbia Court of Appeals.

Argued April 8, 1981.

Decided July 28, 1981.

---

Gordon H. Glenn, Washington, D. C., with whom George H. Clark and Judith T. Andersen, Washington, D. C., were on the briefs, for Louise Ann Cappelen Murville.

Armin U. Kuder, Washington, D. C., with whom Paul R. Smollar, Washington, D. C., was on the brief, for Dean M. Murville.

Before KELLY and HARRIS, Associate Judges, and GALLAGHER, Associate Judge, Retired.

KELLY, Associate Judge:

██ This is an appeal from an order granting the parties a divorce on the ground of voluntary separation for one year and dividing their various assets. Appellant-wife challenges only the distribution of property, arguing that (1) the trial court erred by refusing to permit cross-examination of appellee-husband regarding his motives for acquiring title to the family home solely in his own name; (2) the court's findings were not supported by substantial evidence; (3) the findings of fact were inadequate as a matter of law; (4) the distribution of property was an abuse of discretion; and (5) a new trial should have been granted because the evidence produced at trial was incomplete and confusing. We affirm.[1]

## I

██ The parties were the only witnesses to testify in this case. During cross-examination of appellee, the last of the two to take the stand, counsel for appellant attempted to rebut appellee's claim on direct that he had titled the family home in his name only in order to obtain what he considered to be a disposition of the property more favorable to his wife and three children in the event of his death. Referring to statements in appellee's deposition, counsel attempted to show appellee's true reason for not sharing ownership with his wife was that he did not trust her. The alleged source of this distrust was that it was only after they were married that he found out certain facts about his wife's premarital life. Appellee objected to this line of questioning, and a bench conference was held at which appellant's counsel proffered his intention to show appellee had a paramour in Paris whom he intended to marry following his divorce from appellant. The trial judge sustained appellee's objection based on relevance. In his brief, appellee contends the court's ruling limiting cross-examination was a proper exercise of discretion "designed primarily to protect the wife from what appeared to be uncomplimentary and unpleasant testimony." If that was in fact the basis of the court's ruling, the court may have abused its discretion, for in appellant's view, she has nothing to hide. More likely, appellee's objection was designed to protect himself. Nonetheless, the trial judge was permitted to restrict testimony regarding reasons appellee might not have trusted his wife and his alleged adultery, on the ground that neither line of questioning was relevant to the issues in dispute. *Bogorad v. Kosberg*, D.C.Mun.App., 81 A.2d 342 (1951). The divorce in this case was granted on the ground of voluntary separation for one year. Under our law, the court

---

1. There is also before us a cross-appeal from Judge Kessler's order of October 24, 1978, granting appellant-wife leave to file a notice of appeal from the judgment entered July 19, 1978. After judgment had been entered, appellant, acting *pro se*, filed a motion for a new trial pursuant to Super.Ct.Civ.R. 59, and requested leave to file a supplemental memorandum within 10 days of her receipt of the trial transcript. An opposition to the motion was filed on August 10, 1978, and appellant received her transcript copy on August 24, 1978. Appellant had by then retained new counsel, who, on September 5, 1978, filed a memorandum in support of the new trial motion. It was not, however, until he examined the court's file on October 11, 1978, that counsel became aware that the new trial motion had been denied on August 31, 1978. A notice of appeal filed at that time would not have been timely, the 30-day period having already expired.

We held in *Pryor v. Pryor*, D.C.App., 343 A.2d 321, 323 (1975), that lack of knowledge of the entry of a judgment, *alone and without more*, does not constitute a showing of excusable neglect upon which the Superior Court may base an extension of the time for filing notice of appeal under D.C. App. R. 4–II(a)(4). In this case, the court found no notice of the entry of the order denying the new trial motion was sent to any counsel of record. In addition to that fact, there had been a substitution of retained counsel, and new counsel acted promptly upon learning of the order of August 31, 1978. In these circumstances, we are not prepared to hold it was an abuse of discretion to grant the motion for leave to file notice of appeal. *Cf. District of Columbia v. Tschudin*, D.C.App., 390 A.2d 986, 989 (1978) (claim of excusable neglect rejected where appellant first claimed it lacked notice of order and then claimed counsel misunderstood order).

is not required to be informed of the causes of the marital breakdown, nor must it assign fault to either party, in order to terminate the marriage and assign property. Therefore, the trial court was permitted, within the considerable discretion allowed to it in controlling cross-examination, *see Brown v. United States*, D.C.App., 409 A.2d 1093, 1099 (1979), to cut off questioning where the answers which were precluded related to collateral issues, and bore only a minimal relation to the credibility of the witness. Furthermore, regardless of whether the house was titled in appellee's name only, or held jointly, the court had jurisdiction to assign the entire interest in it to appellant, if it chose to do so, as part of the property distribution. *Hemily v. Hemily*, D.C.App., 403 A.2d 1139 (1979); D.C.Code 1977 Supp., § 16–910(b). In fact, the court did award appellant a 25% interest in the home. Consequently, appellee's reasons for holding title by himself are not relevant since holding title individually did not shield the property from the court's jurisdiction.

█ Under the statutory guidelines contained in D.C.Code 1977 Supp., § 16–910(b), the court is directed to consider "all relevant factors" when distributing property accumulated during the marriage. If, as alleged in appellant's proffer to the court, appellee had been carrying on an adulterous relationship, we cannot say it would necessarily have been error for the court to have taken that fact into consideration in allocating property. *See Mazique v. Mazique*, 123 U.S.App.D.C. 48, 51, 356 F.2d 801, 804, *cert. denied*, 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966). However, for two reasons, we hold it was not error to preclude cross-examination on that issue. First of all, appellant did not allege, in either her original or her supplemental complaint, that appellee had committed adultery. Secondly, appellant attempted to first raise the issue on cross-examination, and not in direct testimony. That was not the correct way in which to establish the fact that appellee had been an unfaithful husband, as part of her case for a greater share of their assets. The principal purpose of cross-examination is to probe the credibility of the witness and the truthfulness of the testimony presented on direct examination, and not to affirmatively establish the elements of one's own case. *Letsinger v. United States*, D.C.App., 402 A.2d 411, 415 (1979). Cross-examination is a cornerstone of our adversary system, and there is no question the parties in this case were adverse. Nevertheless, the trial court has authority to confine its use to its intended purpose and we find there was no abuse of that authority by the trial court.

## II

█ Appellant challenges the findings of the trial court as both inadequate and unsupported by substantial evidence. Under our standard of review in domestic relations cases, a judgment will not be set aside unless it is plainly wrong or without evidence to support it. D.C.Code 1973, § 17–305(a). We do not substitute our own interpretation of the evidence for that reached by the primary finder of fact. *Quarles v. Quarles*, D.C.App., 353 A.2d 285, 287 (1976), *cert. denied*, 429 U.S. 922, 97 S.Ct. 321, 50 L.Ed.2d 290 (1976). There is of course, as appellant points out, also a threshold requirement that the trial court make sufficient findings to enable this court to exercise meaningful review within the scope permitted. *Moore v. Moore*, D.C.App., 391 A.2d 762, 770 (1978). We are satisfied, though, that the findings in the record are of sufficient detail to meet this requirement. From our review of the transcript and exhibits, we are also convinced there is no variance between the evidence and the court's findings that would lead us to categorize those findings as plainly wrong or without support in the evidence.

## III

The division of property mandated by the trial court is attacked by appellant as an abuse of discretion. We note at the outset that the court's discretion in this matter is broad. *Turpin v. Turpin*, D.C.App., 403 A.2d 1144 (1979). The guidelines for allo-

cating property upon entry of a final decree of divorce state the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit. [D.C.Code 1977 Supp., § 16–910.]

These factors are essentially a codification of the guidelines enunciated in the cases which construed the trial court's authority under the prior statute. *Turpin v. Turpin, supra* at 1146. The major asset at stake was the parties' home, the assessed value of which was $53,000 at the time of trial. Appellant was awarded a 25% interest in the house; each party was awarded stocks and/or mutual funds held in their own names; stock held jointly was ordered to be divided equally; appellee was ordered to pay appellant $5,000 from a bank account held jointly by appellee and a daughter; appellee was awarded sole title to a bank account held in his name only; appellee was awarded title to their 1975 Peugeot while appellant was awarded their 1965 Chrysler;

and, appellant was awarded sole ownership of real property located in Florida which she had inherited and to which it was found appellee had not contributed. Finally, appellee was ordered to contribute $1,750 towards appellant's legal fees.

A comparison of the value of property each party received shows the distribution clearly favored appellee. However, that alone does not establish an abuse of discretion, since the issue is to be determined by an assessment of the totality of circumstances. *See Campbell v. Campbell,* D.C.App., 353 A.2d 276, 279 (1976). The trial court found that appellee was retired on a disability from the federal government, unable to work, in poor health and in need of surgery on both eyes. Appellant is employed full time. The court found that during most of their marriage appellee was the sole breadwinner, and that he furnished the sole consideration for the purchase of their home. There was testimony to the contrary. However, we defer to the trial court, given its opportunity to observe firsthand the presentation of the evidence. Although we would prefer the trial court to have been more precise as to the basis for its allocation of property, we cannot say the ultimate result represents an abuse of discretion. *See Benvenuto v. Benvenuto,* D.C. App., 389 A.2d 795, 799 (1978).

IV

Appellant's final argument is that the trial court should have granted a new trial since the evidence was incomplete and confusing. The decision to grant or deny a motion for a new trial is a matter within the discretion of the trial judge, and is subject to reversal only for abuse. *Desmond v. Robertson,* D.C.App., 211 A.2d 775 (1965). There is some merit to the contention the evidence at trial was less than complete, and that issues were thereby confused. However, this is the fault of both parties, and so long as the trial judge considered the evidence that was presented adequate information upon which to render a decision, we cannot hold it was an abuse to not order a new trial. Appellant would

more than likely be able to marshal more proof in another evidentiary proceeding, but that alone does not entitle her to a second chance.

For all the foregoing reasons, the judgment appealed from is

*Affirmed.*