Matthew McCREE, Appellant,

v.

Leona McCREE, Appellee.

Leona McCREE, Appellant,

v.

Matthew McCREE, Appellee.

Nos. 81–1604, 82–31.

District of Columbia Court of Appeals.

Argued Dec. 14, 1982.

Decided July 27, 1983.

Joel W. Anders, Washington, D.C., for appellant in No. 81–1604 and cross-appellee in No. 82–31.

Edith U. Fierst, Washington, D.C., with whom Sally J. Greenberg, Washington, D.C., was on the brief, for appellee in No. 81–1604 and cross-appellant in No. 82–31.

Virginia G. Watkin, New York City, Joan D. Klein, Lyle Jeffrey Pash, Washington, D.C., and Judith I. Avner, New York City,

were on the brief, for amici curiae NOW Legal Defense and Education Fund, Women's Equity Action League, The National Center on Women and Family Law, Inc., The American Civil Liberties Union Fund of the National Capitol Area, The Organization of Women for Legal Awareness, Inc., and The Pension Rights Center, urging affirmance in No. 81–1604.

Before FERREN * and BELSON, Associate Judges, and KELLY,** Associate Judge, Retired.

BELSON, Associate Judge:

This case presents a variant of the issue that we addressed today in *Barbour v. Barbour,* 464 A.2d 915: the extent to which Civil Service pension benefits may be deemed marital property subject to equitable distribution under D.C.Code § 16–910(b) (1981). Here, as in *Barbour,* the trial judge concluded that such benefits may represent marital property, and ruled that Leona McCree (hereinafter appellee) should receive a portion of the benefits to which Matthew McCree (hereinafter appellant) became entitled during the couple's marriage of nearly 26 years.

Here, in contrast to *Barbour,* appellant does not challenge the trial court's basic conclusion that pension benefits may constitute marital property within the meaning of § 16–910(b). Rather, appellant seeks reversal on the ground that by awarding appellee a part of his pension, most of the rights to which accrued before the 1977 effective date of the current version of § 16–910(b) and the 1978 effective date of 5 U.S.C. § 8345(j)(1), the trial court gave the statutes retroactive application and thereby violated the contract clause and the due process clause of the Constitution.[1] Find-

* Associate Judge Ferren participated at oral argument, but recused himself from further participation in this case.

** Judge Kelly was an Associate Judge at the time of argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

1. We note that because appellant did not raise his constitutional arguments in the trial court, he did not preserve the issue for appellate review. We nevertheless will pass on the issues, which have been fully briefed and argued.

We also note that the Superior Court rules require that the Corporation Counsel be notified and allowed to intervene in any proceeding

ing these arguments unpersuasive, we affirm.

On cross-appeal appellee contends that the trial court erred in declining to require appellant to pay alimony. Concluding that no abuse of discretion occurred, we also affirm this aspect of the trial court's rulings, but remand for consideration of appellee's request for compensation for legal fees incurred in connection with these proceedings, a matter not ruled upon by the trial court.

## I

The parties to this proceeding were married in 1955. The couple had two children, one of whom was a minor at the time of trial. In November 1978, the couple separated. In September 1981, the trial court entered a judgment of absolute divorce, and awarded appellee custody of the minor child.

During the couple's marriage appellant was employed by the federal government as a pressman. He continued in this position nearly 35 years, until his retirement in November 1980. At the time of his retirement appellant earned approximately $27,000 per year.

Appellant is now in his late 50's. Since retiring, appellant's Civil Service pension benefits have been his sole source of income. At the time of trial these benefits amounted to over $14,000 per year; because of cost of living adjustments this figure can be expected to increase in the future.

Appellee was employed as a domestic during much of the marriage. Now in her late 40's, she continues to be so employed, working 5 days a week for five different employers. Appellee has no pension of her own, although she may eventually receive modest Social Security benefits. The trial court found that appellee suffered from serious physical and emotional problems that necessitated regular expenditures for medication and counseling.

As required by D.C.Code § 16–910(b), the trial court attempted to arrive at an equitable distribution of the property that the couple had acquired during marriage. The facts developed during trial revealed that appellant's pension constituted the principal asset that had been acquired during marriage. After determining that those portions of the pension that were attributable to appellant's earnings during the marriage were marital property, the court concluded that in the circumstances of this case, it was equitable that appellee receive 50% of that property. Adopting a computation method set forth in the Foreign Service Act of 1980, 22 U.S.C. § 4044(10) (Supp. V 1981), the trial court calculated that 73% of appellant's pension rights were attributable to his earnings during marriage, and therefore appellee should receive 36.5% of appellant's monthly pension payments.[2] Accordingly, the court entered an order that required the Office of Personnel Management (OPM), pursuant to 5 U.S.C. § 8345(j)(1) (Supp. V 1981), to pay directly to appellee that percentage of appellant's future monthly pension payments.

## II

Appellant's constitutional arguments rest on the premise that the trial court retroactively, and hence improperly, applied D.C. Code § 16–910(b) and 5 U.S.C. § 8345(j)(1)

in which the constitutionality of a District of Columbia statute has been drawn into question. *See* Super.Ct.Civ.R. 24(c) & 24–I. The rules provide similar intervention rights for the United States Attorney General whenever the constitutionality of a federal statute is challenged. *See id.* In view of our conclusion that the constitutional challenges to 5 U.S.C. § 8345(j)(1) and D.C.Code § 16–910(b) are insubstantial, however, we deem it unnecessary to return the case to the trial court or to re-

quest briefing in this court by the Department of Justice or the Corporation Counsel.

2. The court arrived at this figure by dividing the number of years that the couple had been married (25.5) by the number of years of creditable service that appellant had accumulated before his retirement (34.83), and multiplying the quotient by .50:

$(25.5 \div 34.83) \times .50 = 73 \times .50 = .365,$ or 36.5%.

to his pension. With respect to the local statute, appellant contends that § 16–910(b), a part of the Marriage and Divorce Act of 1977, should not have governed the distribution of marital property in this divorce proceeding because the parties' marriage occurred before the current statute's April 7, 1977 effective date. Appellant makes a similar argument with respect to the federal statute, which amended the Civil Service Act. Appellant contends that § 8345(j)(1), which did not become effective until September 15, 1978, should not apply to his pension rights, because they became vested before that date. Consequently, he argues, the pre-1978 version of the Civil Service Act, which would have prevented the OPM (or previously, the Civil Service Commission) from complying with property distribution orders of state courts requiring payment of pension benefits to a federal retiree's former spouse, should have governed this proceeding. To examine the merits of his contentions, we deal first with the intended reach of the two statutes in question.

### A.

■ Section 16–910(b) provides that upon the entry of a final divorce decree, the court shall distribute all property, other than that exempted under § 16–910(a), "accumulated during the marriage . . . ." By its terms, the statute neither distinguishes between marriages that occurred before 1977 and those that occurred subsequently, nor property acquired before 1977 and that acquired thereafter. On the basis of the statutory terms, therefore, it appears that the current statute governs all property distributions made pursuant to divorce decrees entered after April 7, 1977, regardless of whether the marriage occurred before that date or whether particular items of marital property were acquired before that date. Indeed, a number of this court's decisions have, by implication, so construed the coverage of § 16–910(b). *Cf., e.g., Leftwich v. Leftwich,* 442 A.2d 139, 141–42 (D.C. 1982) (1967 marriage; property distributed under 1977 version of statute); *Hemily v.*

*Hemily,* 403 A.2d 1139, 1140–43 (D.C.1979) (property acquired in 1958 distributed under current version of statute).

The nature of the statute's remedial purpose lends support to this construction. Section 16–910(b) was enacted to ensure that spouses who had made nonmonetary contributions to the joint marital enterprise would no longer be disadvantaged in property settlements because they had not made monetary contributions toward the acquisition of particular marital assets, or because such assets were not jointly titled. *See generally Hemily, supra,* 403 A.2d at 1141–42. If we were to construe the statute as applying only to marriages that occurred after April 7, 1977, however, we would prolong for many years the very inequity that the District of Columbia Council sought to alleviate by enacting § 16–910(b). *Accord Bacchetta v. Bacchetta,* 498 Pa. 227, 231, 445 A.2d 1194, 1196 (1982) (to interpret Pennsylvania counterpart to § 16–910(b) as applying only to marriages occurring after statute's effective date would thwart statute's remedial purpose); *Kujawinski v. Kujawinski,* 71 Ill.2d 563, 576, 17 Ill.Dec. 801, 807, 376 N.E.2d 1382, 1388 (1978) (to interpret Illinois counterpart to § 16–910(b) as applying only to marriages occurring after statute's effective date would thwart statute's remedial purpose). In addition to placing one generation of married persons at a potential disadvantage in comparison with later generations of married persons, the construction that appellant urges would require our courts to apply differing sets of principles and laws depending upon when a given marriage occurred or when particular marital property was acquired.

We therefore conclude that the current version of § 16–910(b) is intended to apply prospectively to all property distributions made in connection with divorce decrees entered after April 7, 1977. Since the divorce decree in the instant proceeding was entered in 1981, the parties' marital property was properly distributed under the current version of the statute.

## B.

Having rejected appellant's contention that the trial court erroneously gave § 16–910(b) retroactive application, we turn to his parallel argument concerning the 1978 amendments to the Civil Service Act. As we explained in *Barbour, supra,* these amendments were designed to authorize OPM to comply with court-ordered property distributions that awarded a portion of a Civil Service pension to the pension recipient's former spouse. Congress enacted the amendments because the pre-1978 version of the Act barred OPM from complying with such court orders, with the result that many dependent former spouses were left without any retirement benefits despite many years of nonmonetary contributions to a marriage. *See* S.Rep. No. 1084, 95th Cong., 2d Sess. 2, *reprinted in* [1978] U.S. Code Cong. & Ad.News 1379, 1380.

The amendments became effective on September 15, 1978. Appellant retired in November 1980, and thereafter began receiving monthly pension benefits. In September 1981, the trial court entered a judgment of absolute divorce and ordered that 36.5% of appellant's future monthly benefit payments should be paid by OPM directly to appellee. Given these facts, it is difficult to perceive how the trial court's order can be regarded as giving rise to a retroactivity question. It is appellant's contention, however, that the court's order did give 5 U.S.C. § 8345(j)(1) retroactive application because appellant's pension had become vested before September 15, 1978. We disagree.

First, we note that although the statute itself is silent with respect to this issue, its legislative history demonstrates that Congress contemplated that the amendments would govern *future* payments under pensions that vested before September 15, 1978. For example, the report of the Senate Government Affairs Committee stated that the amendments:

[S]hall only apply to payments made from the civil service retirement fund after the date of the enactment of this legislation. Thus, the amendments could apply to di-

vorces or legal separations which took place before the date of enactment, but the amendments will not affect any payments of annuities or lump-sum refunds made prior to such enactment date. In addition, State law will determine if a final divorce decree could be revised; however, the Civil Service Commission would be authorized to honor a decree revised after enactment.

S.Rep. No. 1084, 95th Cong., 2d Sess. 3–4, *reprinted in* [1978] U.S.Code Cong. & Ad. News 1379, 1381–82. In our view, this passage lends support to the conclusion that Congress intended the 1978 amendments to have prospective effect in the sense that they would govern pension benefit payments made after September 15, 1978, regardless of whether the pension rights vested or the divorce decree was entered before that date. *See Hobbs v. United States Office of Personnel Management,* 485 F.Supp. 456, 458–59 (M.D.Fla.1980) (§ 8345(j)(1) governs post-1978 payments under pension that vested before 1965; *cf. Deering v. Deering,* 292 Md. 115, 126 n. 8, 437 A.2d 883, 886, 889 n. 8 (1981) (civil service pension that vested before 1978 subject to § 8345(j)(1) (by implication)).

An additional consideration affecting our construction is the remedial purpose of § 8345(j)(1). This statute, like D.C.Code § 16–910(b), was enacted to remedy the deficiencies of an earlier system under which former spouses who had made nonmonetary contributions to a marriage were often left "with no direct retirement benefits despite many years of working without compensation, managing a home, and contributing time and effort to the joint marital enterprise." S.Rep. No. 1084, 95th Cong., 2d Sess. 2, *reprinted in* [1978] U.S. Code Cong. & Ad.News 1379, 1380. Appellant's construction of the statute, however, like his proposed construction of the coverage of § 16–910(b), would deprive an entire generation of spouses of the statute's remedial effects, thereby substantially defeating, at least for a considerable post-enactment period, the statute's purpose. We decline to

adopt this construction, and instead follow the general rule of statutory construction, which dictates that a remedial statute should be construed liberally in order to effectuate the purposes for which it was enacted.

We therefore conclude that 5 U.S.C. § 8345(j)(1) applies to pension payments made after September 15, 1978. Since the trial court's 1981 order entitled appellee to receive a portion of appellant's future benefits only, the statute governed the property distribution at issue here.

### III

As discussed above, we conclude that the trial court's construction of D.C.Code § 16–910(b) and 5 U.S.C. § 8345(j)(1) comported with the terms and purposes of those statutes. Because the property distribution at issue here took place in 1981, after the effective dates of both statutes, the trial court's rulings, strictly speaking, gave the statutes only prospective application. It is true, however, that in a limited sense the statutes, as applied in this case, do have some retroactive reach because they affect a relationship and a property interest that predate the enactment of either statute. In the remainder of this section, therefore, we shall explain why, to the extent that the statutes may be deemed to have operated retroactively against appellant, they do not deprive him of property without due process of law or impair the obligations of contract.

### A.

The first prong of appellant's constitutional attack is based on a claim that § 16–910(b), as applied in this case, retroactively divested appellant of a vested property right in violation of the due process clause. Similar arguments have been raised, unsuccessfully, in connection with a number of equitable distribution statutes that are substantially similar to § 16–910(b). *See, e.g., Bachetta, supra,* 498 Pa. at 232–34, 445 A.2d at 1197–98; *Valladares v. Valladares,* 80 A.D.2d 244, 252–53, 438 N.Y.S.2d 810, 815–16 (1981), *aff'd,* 55 N.Y.2d 388, 434 N.E.2d 1054, 449 N.Y.S.2d 687 (1982); *Kujawinski, supra,* 71 Ill.2d at 577, 17 Ill.Dec. at 806–07, 376 N.E.2d at 1387–88; *Corder v. Corder,* 546 S.W.2d 798, 804 (Mo.Ct.App.1977); *Rothman v. Rothman,* 65 N.J. 219, 231–32, 320 A.2d 496, 501–02 (1974). Generally, the courts that have rejected such arguments have done so on the ground that the statutes satisfied the requirement that to afford due process the police power need only be exercised in a manner that is not unreasonable, arbitrary, or capricious, and that the means selected bear a real and substantial relation to the objective sought to be attained by the statute. *See, e.g., Bacchetta, supra,* 498 Pa. at 232, 445 A.2d at 1197. We reject appellant's due process challenge to § 16–910(b) for the same reasons.

Because marriage is a social relationship that in all respects is subject to the state's police power, *see, e.g., Rothman, supra,* 65 N.J. at 228, 320 A.2d at 501, § 16–910(b) falls squarely within the proper sphere of the District of Columbia's powers over domestic relations. The statute was enacted to serve an important and legitimate state interest: ensuring that spouses who made noneconomic contributions to the marriage partnership are not unfairly penalized in distributions of property following divorce. The statute not only furthers this interest directly, but also sets forth a nonexhaustive list of considerations to guide the trial court's exercise of discretion. Reference to these considerations ensures that property of the spouses (other than the sole and separate property of a spouse, as identified in § 16–910(a)) will be distributed to *former* spouses as justified by the facts of individual cases. Thus, the statute is clearly fashioned so as to avoid arbitrary or inequitable divestitures of property formal title to which was vested in but one spouse.

Against this exercise of the police power in the public interest we must balance appellant's property interest in his

pension. First, it should be noted that § 16–910(b) does not directly affect property rights in any way. As the New Jersey Supreme Court observed with respect to that state's equitable distribution statute:

> No interest in property is taken from one person and transferred to another by the language of the enactment. Only if a person becomes a party to a proceeding for divorce ... does the statute even have potential relevance. Finally ... no change in property rights will occur except upon entry of a judgment of allocation, which must by its terms be "equitable."

*Rothman, supra,* 65 N.J. at 229–30, 320 A.2d at 502. The same is true of the District of Columbia statute at issue here.

Second, appellant cannot claim that even under the law of this jurisdiction as it existed before 1977, he had any reasonable expectation of an absolute right to his pension in the event of divorce. Although before 1977 our courts lacked statutory power to distribute individually titled property, our courts did sometimes, in reliance on general equitable principles, look beyond strict concepts of title when necessary to reach just results. *See Lyons v. Lyons,* 295 A.2d 903, 905 (D.C.1972); *Hunt v. Hunt,* 208 A.2d 731, 733 (D.C.1965). The 1977 statute, therefore, merely represented an expansion and codification of authority that our courts had already exercised in this field. *See generally Hemily, supra,* 403 A.2d at 1141–42. Moreover, even if appellant's pension might, under pre-1977 law, have escaped outright distribution, the income he derived from his pension properly might have been considered in setting alimony. Thus, before 1977 appellee might well have shared in her former spouse's pension indirectly, through alimony payments.

Given these facts, we conclude that to the extent that § 16–910(b), in its current version, has in any way retroactively upset appellant's expectations regarding the enjoyment of his pension, this loss or impairment is slight in comparison to public benefits that flow from the statute. We therefore are satisfied that § 16–910(b) represents a valid means of mitigating the economic hardships of divorce.

Appellant appears to raise a similar due process argument with respect to the 1978 amendments to the Civil Service Act. His contention, as we understand it, is that because his pension had vested long before 1978, the pension was completely protected against subsequent congressional modifications to the Civil Service retirement system. Appellant's contention, then, is that the 1978 amendments divested him of property in violation of the Fifth Amendment. We cannot agree.

At the outset, it is worth noting that 5 U.S.C. § 8345(j)(1) does not, by its terms, transfer or reduce pension benefits. Instead, the statute simply authorizes OPM to comply with court orders that are based on a given state's laws regarding marital or community property. Whether the statute can even be regarded as giving rise to a Fifth Amendment claim is therefore problematic: certainly to the extent that the federal statute deprives anyone of pension benefits, it does so in a highly indirect fashion. It might reasonably be argued, therefore, that so long as the underlying state statutory scheme does not offend due process, and ours assuredly does not, the federal statute also survives constitutional scrutiny.

█ Even if § 8345(j)(1) is viewed as depriving appellant of some of his pension benefits, however, we conclude that the statute comports with the due process clause of the Fifth Amendment. Vested Civil Service pensions have never been regarded as constitutionally protected from all legislative modification. *See, e.g., United States v. Teller,* 107 U.S. 64, 68, 2 S.Ct. 39, 43, 27 L.Ed. 352 (1882); *Nordstrom v. United States,* 342 F.2d 55, 60 (Ct.Cl.1965); *Stouper v. United States,* 109 U.S.App.D.C. 106, 109, 284 F.2d 240, 243 (1960); *Rafferty v. United States,* 210 F.2d 934, 936–37 (1954); *cf. Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435

(1960).[3] Rather, the due process clause of the Fifth Amendment protects only against congressional actions that cannot withstand minimal scrutiny. As the Supreme Court explained in *Flemming v. Nestor, supra,* which concerned a due process challenge to congressional changes to the analogous Social Security system:[4]

> We must conclude that a person covered by the Act has not such a right in benefit payments as would make *every* defeasance of "accrued" interests violative of the Due Process Clause of the Fifth Amendment.
>
> \*  \*  \*  \*  \*  \*
>
> This is not to say, however, that Congress may exercise its power to modify the statutory scheme free of all constitutional restraint. The interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause.... Particularly when we deal with a noncontractual benefit under a social welfare

program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a *patently arbitrary classification, utterly lacking in rational justification.*

363 U.S. at 611, 80 S.Ct. at 1373 (emphasis added).

■ Accordingly, we believe that due process requires only that legislative modifications to the Civil Service retirement program be neither arbitrary nor irrational. The modification challenged here appears to represent a rational means of protecting dependent former spouses of federal retirees. We therefore are satisfied that to the extent that 5 U.S.C. § 8345(j)(1) divested appellant of certain pension benefits, the divestiture did not offend the Fifth Amendment.

Appellant's remaining constitutional argument requires only brief attention. Appellant contends that § 16–910(b), as applied in this case, offends the contract

---

**3.** A number of decisions which have addressed the constitutionality of legislative modifications to federal pensions may be read as suggesting that an employee's right to a Civil Service pension does not constitute a property interest protected by the due process clause of the Fifth Amendment. For example, in *Nordstrom, supra,* the Court of Claims stated that "it is settled that, if there can be any such vested rights *at all* in a federal civilian service annuity, they do not accrue unless the employee is fully entitled to immediate payment under pre-existing law." 342 F.2d at 60 (emphasis added); *accord Stouper, supra,* 109 U.S.App.D.C. at 109, 284 F.2d at 243; *Rafferty, supra,* 210 F.2d at 936–37. The noncontractual and noncontributory (in the sense that the size of one's benefits is not tied to the amount contributed) nature of Civil Service retirement benefits, in contrast to those received under private pension plans, has been cited as the rationale for regarding the right to such pensions as not rising to the level of a "property" interest. *See, e.g., Stouper, supra,* 109 U.S.App.D.C. at 109, 284 F.2d at 243. For a discussion of the differences between benefits received under the Civil Service retirement system and those received under private plans see House Comm. on Post Office and Civil Service, 97th Cong., 1st Sess., Civil Service Retirement System: History, Provisions, and Financing 34–37 (Comm.Print 1981) [hereinafter cited as Committee Print].

Other decisions indicate not that governmental retirement benefits do not constitute constitutionally protected property, but rather that such benefits represent a property interest that is protected only against arbitrary and irrational congressional actions. *See Flemming, supra,* 363 U.S. at 611, 80 S.Ct. at 1372, *quoted in Stouper, supra,* 109 U.S.App.D.C. at 109, 284 F.2d at 243. Based upon the language in *Flemming,* the Supreme Court's most recent decision in this field, we believe that the latter view is the preferable one with respect to the nature of the interest that federal employees possess in their pensions. Moreover, such a view has the benefit of logical consistency with our conclusion in *Barbour* that Civil Service pensions may constitute marital "property" within the meaning of D.C.Code § 16–910(b) and our conclusion in this case that § 16–910(b), as applied to appellant, does not unconstitutionally deprive him of "property."

**4.** Unlike private pension plans, in which an employee's benefits are based upon his contributions to the retirement fund, Civil Service and Social Security benefits are based upon an employee's earnings record and his years of service. *See Flemming, supra,* 363 U.S. at 608–09, 80 S.Ct. at 1371–72; *Stouper, supra,* 109 U.S.App.D.C. at 109, 284 F.2d at 243; Committee Print, *supra* note 3, at 34–37.

clause, which prohibits states from enacting laws that impair the obligation of contracts. U.S. CONST. art. I, § 10, cl. 1. Specifically, appellant argues that in ordering the distribution of his pension under the 1977 version of the statute, the trial court "impaired obligations under the marriage contract entered into between the parties in 1955 . . . ."

■ Quite simply, it is settled law that marriage contracts are not "contracts" within the meaning of this constitutional provision. As the Supreme Court explained nearly a century ago:

> "When the contracting parties have entered into the marriage state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest not upon their agreement, but upon the general law of the State, statutory or common, which defines and prescribes those rights, duties, and obligations. They are of law, not of contract. It was of contract that the relation should be established, but, being established, the power of the parties as to its extent or duration is at an end. Their rights under it are determined by the will of the sovereign, as evidenced by law. They can neither be modified nor changed by any agreement of parties. It is a relation for life, and the parties cannot terminate it at any shorter period by virtue of any contract they may make. The reciprocal rights arising from this relation, so long as it continues, are such as the law determines from time to time, and none other . . . . *It is not, then, a contract within the meaning of the clause of the Constitution which prohibits the impairing the obligation of contracts.* It is, rather, a social relation, like that of parent and child, the obligations of which arise not from the consent of concurring minds, but are the creation of the law itself . . . ."

*Maynard v. Hill,* 125 U.S. 190, 211, 8 S.Ct. 723, 729–30, 31 L.Ed. 654 (1888) (quoting *Adams v. Palmer,* 51 Me. 480, 483 (1863)) (emphasis added); *accord Tipping v. Tipping,* 65 U.S.App.D.C. 222, 224, 82 F.2d 828, 830 (1936) (because contract clause inapplicable to marriage contracts, retroactive reach of statute expanding grounds for divorce in District of Columbia results in no unconstitutional impairment of contracts). In recognition of the settled law that governs this issue, courts in several states have ruled that equitable distribution statutes similar to § 16–910(b) do not offend the contract clause. *See, e.g., Valladares, supra,* 80 A.D.2d at 253, 438 N.Y.S.2d at 816; *Corder, supra,* 546 S.W.2d at 803; *Rothman, supra,* 65 N.J. at 225 n. 4, 320 A.2d at 499 n. 4; *cf., e.g., In re Franks,* 189 Colo. 499, 506–07, 542 P.2d 845, 850 (1975) (en banc) (equitable distribution statute permissible under contract clause of state constitution), *stay denied,* 423 U.S. 1043, 96 S.Ct. 766, 46 L.Ed.2d 632 (1976). We agree with the conclusions of these courts and rule that to the extent that D.C.Code § 16–910(b) may be regarded as having operated retroactively against appellant, the statute did not impair the parties' obligations under their marriage contract.[5]

### IV

We now turn to the issues raised by appellee on cross-appeal. Specifically, we consider whether the trial court erred in declining to order appellant to pay permanent alimony and the counsel fees that appellee incurred in connection with these proceedings in the Superior Court.

■ With respect to the denial of permanent alimony, the trial court concluded that "[g]iven the limited incomes of both parties, and the near identity of their incomes after distribution of the marital assets, the court does not believe that an award of alimony is justified." Decisions respecting the grant or denial of alimony

---

**5.** By its terms, the contract clause only applies to legislation enacted by states. It is therefore unnecessary for us to consider whether 5 U.S.C., § 8345(j)(1) impairs the obligations of contract.

are committed to the sound discretion of the trial court and will be disturbed on appeal only when the record manifests abuse of that discretion. *See, e.g., Majette v. Majette,* 261 A.2d 824, (D.C.1970). In determining whether to award alimony the trial court should consider several factors, including the duration of the marriage, the parties' ages and health, their respective economic postures, and society's interest in seeing that former spouses do not become public charges. *See id.* The trial court's opinion demonstrates that the court fully considered the relevant factors, and determined that an award of alimony was inappropriate. On the basis of the record in this case, we cannot say that the court abused its discretion in so ruling.

The trial court's memorandum opinion and order is silent concerning appellee's request for attorney fees incurred at the trial level of these proceedings. Although the trial court might have intended such silence to be construed as a denial of appellee's request, the present record is insufficient to permit appellate review of the bases for the denial. We therefore remand for the limited purpose of having the trial court rule explicitly on the attorney fee request.[6] In view of the foregoing,

*This action is remanded to the trial court for the limited purpose set forth in Section IV of this opinion, but the judgment is in all other respects affirmed.*

---

**6.** *Cf., e.g., Darling v. Darling,* 444 A.2d 20, 23 (D.C.1982); *Lyons v. Lyons,* 295 A.2d 903, 906 (D.C.1972).