Charles R. BARBOUR, Appellant,

v.

Juanita BARBOUR, Appellee.

No. 82-138.

District of Columbia Court of Appeals.

Submitted Jan. 7, 1983.

Decided July 27, 1983.

---

A. Lillian C. Kennedy, Washington, D.C., was on the brief for appellant.

Peg Shaw, Washington, D.C., was on the brief for appellee.

Virginia G. Watkin, New York City, Joan D. Klein, Lyle Jeffrey Pash, Washington, D.C., and Judith I. Avner, New York City, were on the brief for amicus curiae, NOW Legal Defense and Education Fund.

Before FERREN * and BELSON, Associate Judges, and KELLY,** Associate Judge, Retired.

---

* Following submission Associate Judge Ferren recused himself from further participation in this case.

** Judge Kelly was an Associate Judge at the time of submission. Her status changed to Associate Judge, Retired, on March 31, 1983.

BELSON, Associate Judge:

The principal issue we consider on this appeal is a question of first impression in this jurisdiction: whether Civil Service pension benefits may constitute marital property subject to equitable distribution under D.C.Code § 16–910(b) (1981). The trial court answered this question in the affirmative and awarded appellee 50% of that portion of appellant's pension benefits attributable to his earnings during the couple's marriage. Appellant contends, *inter alia,* that the trial court erred in so ruling, or, alternatively, that if pensions may be deemed marital property, the court erred in failing to award him a portion of appellee's federal pension. We affirm.[1]

I

The parties married in 1952, separated in 1969, and were granted a divorce in December 1981. The couple's seven children have now reached majority. Appellant had a history, going back to 1962, of failing to support the couple's children, one of whom is mentally retarded. At the time of trial there was an outstanding judgment of $5,850 in unpaid child support and maintenance against him.

The trial court found that at the time of trial appellant was 51 years old and had no major health problems other than high blood pressure. He had been employed at Walter Reed Hospital since February 1951. Including all of his eligible federal service, appellant had accumulated 30 years toward his Civil Service retirement pension.

Appellee was 49 years old at the time of trial. The court below found that appellee was taking prescription medication regularly for a variety of ailments, and had exhausted her sick leave. Appellee had been continuously employed at the Government Printing Office since March 1975. She had accumulated 6 years of service that could be counted toward her Civil Service pension.

At the time of trial the parties earned roughly equal salaries and had approximately equal debts. Appellant had no dependents, whereas appellee cared for a grandson and his mother, the couple's mentally retarded daughter. In addition, appellee furnished at least some support for five other children and four additional grandchildren. During the marriage appellee was responsible for all child care, household cleaning, meal preparation, and laundry. On occasion she also worked outside the home at part-time jobs.

The trial court ruled that Civil Service retirement pensions were marital property subject to equitable distribution.[2] On the basis of the facts set forth above—the disparate obligations that the parties had undertaken with respect to their children and grandchildren, as well as the impossibility of appellee accumulating more than 20 years of eligible federal service toward her pension—the court determined that, under § 16–910(b), upon appellant's retirement appellee should receive a share of appellant's pension benefits, but appellant should not receive a share of any benefits that appellee might receive upon her retirement.

Specifically, the court ruled that appellee should receive 50% of the pension benefits

---

1. We remand for the limited purpose of having the trial court make the judgment more specific as to the percentage portion of appellant's pension appellee shall receive if appellant retires after, rather than at, the age of 55.

2. Judge Kessler cited *McCree v. McCree,* 109 Wash.D.L.Rptr. 2145 (Oct. 20, 1981), which she had decided 3 months earlier, as support for this conclusion. Although an appeal was taken in *McCree,* which we decide today in 464 A.2d 922, the appellant in *McCree* did not challenge the court's basic ruling that Civil Service pensions may be deemed marital property under § 16–910(b). Since this issue is properly before us in this appeal, but not in *McCree,* we address the issue solely in this appeal, and regard the trial court's *Barbour* decision as having adopted by reference the rationale provided in *McCree.*

attributable to employment during the years of the parties' marriage. To determine how much of appellant's benefits were attributable to this period, the court divided the number of the years of marriage (29) by the number of years of appellant's creditable service (34).[3] Consequently, appellee's equitale share of appellant's future pension amounted to 43% of his monthly benefits.[4]

## II

Appellant's first argument is that the trial court's conclusion that pension benefits may constitute marital property rests upon misconstructions of both D.C.Code § 16–910 and the 1978 amendments to the Civil Service Act. With respect to the local statute, appellant contends that because § 16–910 does not expressly refer to pensions, the statutory term "property" may not through judicial construction be found to encompass pensions. With respect to the federal statute, appellant contends that the trial court erroneously construed recent amendments as *requiring* that state courts regard pensions as marital or community property. We find neither argument persuasive.

## A.

D.C.Code § 16–910 (1981) provides that:

Upon the entry of a final decree of annulment or divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or de-

scent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

The statute was enacted in 1977 as part of the Marriage and Divorce Act, D.C.Law 1–107, D.C.Reg. 5869 (1977). Before 1977, our trial court could not apportion property owned by one spouse unless the other spouse could demonstrate a legal or equitable interest in the property. *See Hemily v. Hemily,* 403 A.2d 1139, 1141–42 (D.C.1979). Under the current statutory scheme, however, title is irrelevant to property distribution determinations:

[R]egardless of how a certain asset is titled, if it was acquired during the marriage other than by gift, bequest, devise, or descent to one spouse (or by increase thereof or in exchange therefor) it is subject to distribution under subsection (b)

---

**3.** Although at the time of trial appellant had accumulated only 30 years of creditable service, the court made its calculations on the assumption that appellant would work 4 more years, until he reached 55 years of age. The court made no calculation which took into account the possibility that appellee could continue to work after the age of 55, a matter to be addressed on remand.

**4.** $(29 \div 34) \times .50 = .8529 \times .50 = .4264,$ or 43%. The court based its formula on that set forth in the Foreign Service Act of 1980, 22 U.S.C. § 4044(10) (Supp. V 1981). *See* note 6, *infra.*

whether or not both spouses made actual contributions (financial or otherwise) to the acquisition and maintenance of the property. This fundamental change effected by the new statute simply reflects and supports the reality that when property is so acquired during a marriage, however it is titled, both spouses reasonably may expect to have an interest therein which a court would consider in case of divorce.

*Id.* at 1142.

 Significantly, § 16–910 neither defines the term "property" nor limits the court's power on the basis of the type of property involved. Rather, the only limitations on the court's powers of distribution relate to the time and manner in which the property was acquired. Given the sweeping language of § 16–910(b), which empowers our courts to distribute "*all* ... property acquired during the marriage" (emphasis added), as well as the extensive equitable powers that the statute confers, we share the trial court's view that our construction of the term "property" should be sufficiently broad to encompass such assets as pension rights.[5] In addition, we agree that since a pension constitutes property, to the extent that the right to such property was acquired during marriage, the pension should be deemed "marital property" subject to distribution under § 16–910(b).[6]

---

**5.** Courts in a number of states that have equitable distribution statutes similar to § 16–910(b) have reached the same conclusion. For example, the Supreme Court of Utah, construing the term "property" in the context of that state's equitable distribution statute, observed:

> It is to be particularly noted that that language is in general terms and contains no hint of limitation. The import of our decisions implementing that statute is that proceedings in regard to the family are equitable in a high degree; and that the court may take into consideration all of the pertinent circumstances. It is our opinion that the correct view under our law is that this encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived; *and that this includes any such pension fund or insurance.*

*Englert v. Englert,* 576 P.2d 1274, 1276 (Utah 1978) (footnote omitted; emphasis added). In concluding that pensions constitute marital property under a Maryland statute similar to ours, the Maryland Court of Appeals stated in *Deering v. Deering,* 292 Md. 115, 125, 437 A.2d 883, 889 (1981):

> The term property, "when considered in a broad sense, is a term of wide and rather comprehensive signification .... It has been stated that the term embraces everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition."

*Id.* (quoting *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914, 915 (1965)).

**6.** The case at bar differs from *McCree,* Nos. 81–1604 and 82–31, in that although appellant's pension rights are vested, they are nonmatured because appellant has not reached retirement age and is still employed by the federal government. It is our view that the nonmatured nature of these pension rights does not affect their status as property. Although certain jurisdictions distinguish between matured and nonmatured or vested and nonvested pension rights, we find persuasive the reasoning of the Maryland Court of Appeals, which recently concluded that:

> The dominant trend in this area of the law ... rejects such distinctions between pension benefits when making the threshold determination of whether a retirement plan constitutes marital property and postpones consideration of the possibly contingent nature of such rights until valuing the asset or apportioning the marital property between the parties. As was cogently noted by the court in *Weir:*
>
> [t]he fact is that the concept of vesting, though embodied in the [retirement] plan document itself, really has little meaning from the standpoint of the ultimate decision which must be made under [the marital property act]. Our equitable distribution statute requires that property ... acquired during marriage ... be subject to equitable distribution upon divorce. There is no requirement of vesting. In the final analysis, one must determine whether a property right has been acquired during the marriage and whether equity warrants its inclusion in the material estate in light of its limitations. If deemed includable, the court must mold its judgment to assure a fair allocation of that right.

*Deering, supra* note 5, 292 Md. at 127, 437 A.2d at 889–90 (quoting *Weir v. Weir,* 173 N.J.Super. 130, 133, 413 A.2d 638, 640 (Ch.Div.1980)).

We, like the Maryland Court of Appeals, are of the view that the fact that a particular pension is nonmatured should be a factor only with respect to valuation and apportionment of the asset, not the threshold determination as to

Our conclusion is in accordance with the result reached by a number of states that recently have considered whether retirement benefits constitute marital property under equitable distribution statutes similar to § 16–910(b). *See, e.g., Kuchta v. Kuchta,* 636 S.W.2d 663, 665 (Mo.1982) (en banc); *Deering, supra* note 5, 292 Md. at 122–25, 437 A.2d at 887–88; *Robert C.S. v. Barbara J.S.,* 434 A.2d 383, 387 (Del.1981); *Kruger v. Kruger,* 73 N.J. 464, 468–69, 375 A.2d 659, 662–63 (1977); *In re Marriage of Pope,* 37 Colo.App. 237, 238, 544 P.2d 639, 640 (Colo. Ct.App.1975); *cf., e.g., In re Marriage of Brown,* 15 Cal.3d 838, 842, 544 P.2d 561, 562–63, 126 Cal.Rptr. 633, 634–35 (1976) (en banc) (pension rights acquired during marriage constitute community property).[7] These decisions recognize that pensions have become an increasingly important part of an employee's compensation package, and often, as in the case at hand, represent the single most valuable asset acquired during the marriage. *See, e.g., Kuchta, supra,* 636 S.W.2d at 664; *Deering, supra* note 5, 292 Md. at 122–23, 437 A.2d at 887. Moreover, pensions represent a form of deferred compensation that otherwise would have been available to the parties for investment in other types of deferred-income assets. *See, e.g., Deering, supra* note 5, 292 Md. at 124, 437 A.2d at 888. Since both parties have the same retirement goals and expectations regarding pension benefits as they would have if they had provided for their later years by using wages to purchase other types of investments, we can perceive no reasonable basis for excluding one particular form of deferred income asset, pensions, from the marital estate, while including others. *See id.*

whether the asset constitutes marital property. In the instant case the trial court resolved the problems of valuation and apportionment by determining that a fixed percentage of any future benefits received under appellant's pension should be paid to appellee. Although there are several possible ways of arriving at a fair allocation of nonmatured assets, the method selected by the trial court is a widely used one that has been approved by courts in several states. *See generally id.* at 129–132, 437 A.2d at 891–92 (citing cases). Our approval of

**B.**

Having concluded that the language and purpose of § 16–910(b) support the trial court's ruling that the pension benefits to which appellant became entitled during his marriage constitute marital property, we turn to 5 U.S.C. § 8345(j)(1), the second statute relevant to the trial court's decision.

Before 1978 the Civil Service Act did not authorize the payment of retirement benefits to anyone other than the recipient. Consequently, the Civil Service Commission (now Office of Personnel Management) was not obligated to comply with a recent trend in judicially ordered property settlements toward treating such benefits as marital or community property subject to allocation between the former spouses upon divorce. To remedy this situation, in 1978 Congress adopted amendments to the Civil Service Act that are currently codified at 5 U.S.C. § 8345(j)(1) (Supp. V 1981). The legislative history of these amendments demonstrates that Congress intended that Civil Service pensions, like most other types of pensions, be available for distribution in accordance with state courts' determinations respecting the allocation of marital or community property. Explaining the need for legislation authorizing federal cooperation with property settlements ordered by state courts, the Senate Governmental Affairs Committee observed:

Approximately 4 million individuals rely on the civil service retirement system for retirement benefits. However, the retirement system fails to provide economic protection to the former spouse of a Federal employee. Such a failure, in

the trial court's method of apportioning the future pension rights in this case, however, should not be construed as suggesting that other means might not also be appropriate and fair in light of the circumstances presented in individual cases.

7. For a compilation of cases that have addressed the issue of whether pensions may constitute marital or community property *see generally Deering, supra* note 5, 292 Md. at 122–25, 437 A.2d at 887–88.

many cases, leaves the dependent spouse with no direct retirement benefits despite many years of working without compensation, managing a home, raising children, and contributing time and effort to the joint marital enterprise.

S.REP. No. 1084, 95th Cong., 2d Sess. 2, *reprinted in* [1978] U.S.CODE CONG. & AD. NEWS 1379, 1380. Accordingly, the Act was amended to permit payments to be made "to another person if and to the extent expressly provided for the terms of any court decree of divorce, annulment or legal separation, or the terms of any court order or court-approved property settlement incident to any court decree of divorce, annulment, or legal separation." 5 U.S.C. § 8345(j)(1) (Supp. V 1981).

■ Based on the terms and legislative history of § 8345(j)(1), it is clear that while this federal statute was designed to facilitate the enforcement of property awards such as the one at issue here, the statute does not *require* state courts to treat Civil Service pensions as marital or community property. Since we see nothing in the trial court's decision which suggests that the court misconstrued § 8345(j)(1) as requiring such treatment, we must reject appellant's objections to the court's application of the statute.

■ There is, however, one aspect of the trial court's order of judgment which requires elaboration. As we have stated, the trial court ordered that at such time as appellant chooses to retire, appellee shall receive 43% of appellant's monthly Civil Service Retirement pension. The figure 43% was arrived at by mathematical calculation which included 34 years as the length of appellant's government service at the time of his retirement, and thus assumed his retirement at age 55. The trial court's order of judgment made no provision for a different calculation should appellant retire at a later age. Obviously, if appellant retires later, the years of the parties' marriage (29) will become a smaller percentage of his years of government service. If, for example, appellant should retire at age 60,

then appellee's percentage of his years of government pension should be based on the fraction $^{29}/_{39}$ instead of $^{29}/_{34}$, and appellee's share (of a larger pension) would be 37% instead of 43%.

This action will be remanded to the trial court, therefore, for the limited purpose of having the trial court amplify the order of judgment in such fashion that appellee's pension will be shared by the parties in accordance with the formula utilized by the trial court not only if appellant should retire at age 55, but also if he should retire at a later time.

### III

Having rejected appellant's principal argument, we now address his alternative argument: that if his Civil Service pension was properly treated as marital property under § 16–910(b), then the trial court erred in failing to treat appellee's pension rights similarly. Appellant appears to reason that because the trial court did not award him any portion of his former wife's pension benefits, the court necessarily treated those benefits as "sole and separate property," which is exempt from distribution under § 16–910(b). Appellant therefore contends that it was unjust and inequitable for the court to treat his pension as marital property, while treating appellee's pension as sole and separate property.

Had the court actually treated those portions of appellee's pension that were attributable to her employment during marriage as sole and separate property, appellant's argument would have some merit. The trial court's opinion, however, unambiguously indicates that the court viewed the portions of *both* pensions attributable to earnings during the years of marriage as marital property, and in the exercise of its informed discretion simply declined to award appellant a share of appellee's pension benefits.

■ Section 16–910(b) does not require that marital property be divided equally. *Cf. Murville v. Murville,* 433 A.2d 1106, 1110 (D.C.1981). Rather, the statute calls for

distribution "in a manner that is equitable, just and reasonable." D.C.Code § 16–910(b) (1981). As we have repeatedly stated, the trial court enjoys broad discretion in arriving at an equitable distribution of marital property. *See, e.g., Murville, supra,* 433 A.2d at 1109.

In this case, the trial court, as required by § 16–910(b), undertook a careful analysis of the parties' relative financial positions. First, the court noted that appellee had substantially higher expenditures for the support of the couple's children and grandchildren, as well as higher medical expenses. In addition, the court recognized appellee's extensive contributions to the family unit. Finally, the court observed that at the time of trial appellant had accumulated 30 years of eligible federal service toward his pension, while appellee had accumulated only 6. Thus, although appellee could be expected at the time of retirement to have far greater financial needs, her own pension would be far smaller than her former husband's.

On the basis of these considerations, the court concluded that "it would not be just and equitable, pursuant to § 16–910(b) of the D.C.Code[,] to award [appellant] a share of [appellee's] Civil Service Retirement Pension." Since the trial court's allocation of the parties' marital property was properly based on an assessment of all the relevant circumstances, we hold that the trial court did not abuse its discretion in so ruling.[8] In view of the foregoing,

*This action is remanded to the trial court for the limited purpose set forth in Section II B. of this opinion, but the judgment is in all other respects affirmed.*

---

8. We note that although appellant's brief sets forth six issues in its "Statement of Issues Presented," the legal argument addresses only the two questions discussed above. Since the remaining four contentions appear to be without merit, we do not address them in this opinion.