Elizabeth McDANNELL,
Plaintiff-Appellee,

v.

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT,
et al., Defendants-Appellants.

No. 82-1337.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1983.

Rehearing Denied Nov. 7, 1983.

Joseph A. Morris, Gen. Counsel, Henry G. Watkins, Murray M. Meeker, Washington, D.C., for defendants-appellants.

Susan M. Kelley, Sr. Citizens Legal Project, Legal Aid Society of Central Texas, Inc., Austin, Tex., for plaintiff-appellee.

Before REAVLEY and JOHNSON, Circuit Judges, and WYZANSKI *, District Judge.

REAVLEY, Circuit Judge:

This case turns on legislation and regulations which authorize the Office of Personnel Management to make direct payment of retirement benefits to the former spouses of civil service retirees. The district court held that plaintiff Elizabeth McDannell was entitled to direct monthly payments from the federal government, and that the regulation denying her such payments is inconsistent with congressional purpose and invalid. We reverse.

I.

Elizabeth McDannell obtained a divorce from William McDannell, a retired federal employee of the Army Corps of Engineers, in Texas state court. Applying Texas community property law, the court divided the property belonging to the couple, including the federal civil service retirement benefits that William was receiving. The relevant portion of the divorce decree states:

> The Court finds that Petitioner and Respondent own certain Civil Service Retirement benefits and that Respondent is receiving monthly benefit payments on

should be dismissed. Thus, all five of Richardson's claims must be dismissed.

* District Judge of the District of Massachusetts, sitting by designation.

a month [sic] basis and that Respondent has a present and future interest in and to said monies in their present amounts and as they may be subsequently increased; IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Respondent be the Trustee for Petitioner's interest therein, same amounting to Twenty-five Percent (25%), and Respondent W.P. McDANNELL is FURTHER ORDERED to pay such amounts to Petitioner, ELIZABETH McDANNELL, through the Registry of the District Court, Office of the District Clerk, Williamson County Courthouse, Georgetown Texas, and that such Clerk remit such payments to Petitioner monthly. The first such monthly payment is due on March 1, 1978, and is due each month thereafter.

William McDannell has been unfaithful in making monthly payments to his ex-wife as required by the divorce decree. Elizabeth forwarded a copy of the decree to the Office of Personnel Management (OPM), and requested direct payment of her 25% share of the retirement benefits. She claims the right to receive such direct payment under 5 U.S.C. § 8345(j), which states:

(1) Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent *expressly provided for* in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person.

(2) Paragraph (1) shall only apply to payment made by the Office under this subchapter after the date of receipt in the Office of written notice of such decree, order, or agreement, and such additional information and documentation as the Office may prescribe.

(Emphasis added). Ms. McDannell and the OPM disagree on the meaning of this statute, particularly the "expressly provided for" language. McDannell argues that as long as the divorce decree expressly divides up the civil service pension and awards her a specific share, she is entitled to direct payment from the government. The OPM argues that the divorce decree must expressly provide that it is to make direct payment to the former spouse or else be silent as to method of payment. In other words, the argument on appeal is whether the "expressly provided for" language refers to the retirement *benefit* only or to the *method of payment* as well. Though we think OPM is authorized to pay to the party entitled to the benefit by the terms of the divorce decree, nevertheless OPM may impose conditions on the mechanics of payment to relieve it of any question or uncertainty. OPM is not mandated to transmit funds in a manner inconsistent with the state order.

The OPM has promulgated regulations to carry out its understanding of the statute. One regulation states, in pertinent part:

(2) Absent clear indications to the contrary, an order expressly directing the individual to make payment to the former spouse is not a qualifying court order if the individual objects to direct payment to the former spouse by the Office of Personnel Management.

(3) Orders which qualify under the requirements expressed in paragraphs (a) and (c) of this section, but imply that the individual is to be the source of the payment, are qualifying court orders if, and only if, the individual does not object to the apportionment within the 30-day notice period provided for by § 831.-1707(a)(3).

5 C.F.R. § 831.1703(b). In keeping with this regulation, the OPM notified Mr. McDannell that his ex-wife was requesting direct payment, and asked if he had any objection. He wrote a letter to the agency objecting to any such payments, stating that "I don't think it is right to attach a persons [sic] pension as it is reward that he

earns by long years of hard work, and is the backbone of any living." While his objection appears lacking in legal merit, the OPM followed its regulations and declined Ms. McDannell's request.

## II.

We have examined the relevant legislative history: S.Rep. No. 1084, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 1379 (Senate Report); H.R.Rep. No. 713, 95th Cong., 1st Sess. (1977) (House Report); 124 Cong.Rec. 419–20 (1978); *Annuity Provisions for Former Spouses: Hearings on H.R. 3951 Before the Subcomm. on Compensation and Employee Benefits of the House Comm. on Post Office and Civil Service,* 95th Cong., 1st Sess. (1977) (Hearings I); *Retirement and Withholding Tax Legislation: Hearings on S. 224, H.R. 4319, H.R. 4320, H.R. 8342, H.R. 8771, H.R. 9491 Before the Senate Subcomm. on Civil Service and General Services of the Senate Comm. on Governmental Affairs,* 95th Cong., 2d Sess. (1978) (Hearings II).

H.R. 8771, 95th Cong., 2d Sess. (1978) became Public Law 95–366 and added subsection (j) to 5 U.S.C. § 8345. The bill also amended 5 U.S.C. § 8346(a) by making its anti-assignment provisions inapplicable to § 8345(j). It was designed to carry out the belief that marriage is a partnership and that "each spouse makes a different, but an important, contribution and should have a legal right to a portion of the earnings of the other spouse," Hearings I at 29, a concept widely recognized by many states, most notably the community property states which include Texas. At the same time, the legislation seeks to defer to state courts, traditionally the arbiters in divorce proceedings, by allowing them to determine how the civil service benefits should be split between the couple. 124 Cong.Rec. 419 (statements of Congresswomen Spellman and Schroeder).

The legislation made clear that state courts could, if they were so inclined, divide the retirement benefits between the divorcing spouses. Before its enactment, payments under the civil service retirement system were not assignable or subject to other legal process. Senate Report at 2. Thus, the law was unclear as to whether state courts even had the power to divide these benefits in the face of the Supremacy Clause. *See* 124 Cong.Rec. 420 (Statement of Congresswoman Schroeder). The legislation exempted the division of civil service retirement benefits under § 8345(j) from the anti-assignment provision in § 8346(a), and made clear that federal law did not preempt state court property divisions of these benefits. The congressional concern was well-founded, for the Supreme Court later invoked the Supremacy Clause in prohibiting state court community property divisions of other federal retirement benefits. *See McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (holding military nondisability retirement pay not subject to division); *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (holding Railroad Retirement Act retirement benefits not subject to division).

However, the bill as finally passed was clearly a compromise proposal. An earlier bill, H.R. 3951, 95th Cong., 1st Sess. (1977), would have mandated that the former spouse receive a pro rata share of the retiree's benefits, based on a statutory formula, if the couple had been married at least twenty years. Hearings I at 63. The Civil Service Commission, then in charge of disbursing retirement benefits, and the administration strongly opposed H.R. 3951, arguing that it would be difficult to administer, and that state divorce courts are in the best position to divide marital property equitably based on case-by-case determinations. Hearings I at 103, 128–29; House Report at 7–8, 10; Senate Report at 5. In addition to the difficulty of administration the earlier bill was thought to create the risk of overpayments or dual payments. House Report at 7, 10. The compromise bill that was enacted sought to minimize these hazards, stating that payment would be forthcoming only after receipt of written notice of the decree and "such additional information and documentation as the [OPM] may prescribe," 5 U.S.C. § 8345(j)(2), and that "payment under this paragraph bars recov-

ery by any other person," *id.* § 8345(j)(1). The estimated budgetary impact of the bill was only $50,000 per year, the anticipated costs involving routine paperwork only. Senate Report at 4; House Report at 4.

The purpose of the legislation was to authorize the OPM to comply with the terms of a state court decree and not to undertake its own determination of spousal entitlements. Hearings II at 23, 47; House Report at 1; Senate Report at 1.

■ In this case, the state decree unambiguously appoints Mr. McDannell trustee of the pension funds, and provides that his former spouse's payments are to come from him. Given the concerns for administrative convenience and carrying out state court mandates described above, we find that the regulation challenged here is valid. The OPM would have to override the method of payment plainly spelled out in the decree to honor Ms. McDannell's request. An agency's interpretation of a statute it administers is of course entitled to deference. *Batterton v. Francis,* 432 U.S. 416, 424, 97 S.Ct. 2399, 2404, 53 L.Ed.2d 448 (1977). This is true particularly where, as here, the agency (the Civil Service Commission, predecessor to the OPM) had an actual hand in its drafting and passage. *Central Forwarding, Inc. v. ICC,* 698 F.2d 1266, 1281 (1983). While sympathetic to the plight of Ms. McDannell and others similarly situated, we cannot say that the regulation contravenes congressional purpose. The OPM is entitled to place the burden on the recipient spouse to obtain an order which is not inconsistent with the form of payment she requests the agency to make.[1]

REVERSED and RENDERED.

---

1. Indeed, this is not an unreasonable burden to place upon potential recipients of a direct payment from the OPM. They need only return to the district court to obtain an order that conforms to the requirements of the OPM's regulations. In the instant case, given McDannell's refusal to perform his fiduciary duty, it should be a very simple matter for plaintiff to go to the court in Georgetown to terminate his trust rights.