464 So.2d 991 (1985)
In the Matter of The SUCCESSION OF Winston Hall SIMS.
No. 84 CA 0039.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
Writs Denied April 19, 1985.
*993 Michael Cavanaugh, Baton Rouge, for plaintiff-first appellant Marcella Sims.
A. Kell McInnis, III, Baton Rouge, for defendant-second appellant Estate of Winston H. Sims.
Fred H. Belcher, Jr., Baton Rouge, for defendant-appellee Elizabeth Sims.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
The former spouse of Winston H. Sims (Sims) and the administratrix of his succession both filed devolutive appeals from the judgment of the 19th Judicial District Court, Honorable William H. Brown, presiding. The primary issue presented is whether Marcella McGinnis Sims (Marcella), decedent's former wife, is entitled to a retirement benefit based on the decedent's employment by the United States Government as an air traffic controller, a civil service position. The secondary issue is whether the succession of the decedent is indebted to Marcella for one-half of the decedent-employee's contributions to the retirement system made by decedent during the time decedent and Marcella were married.

FACTS
Winston H. Sims and Marcella McGinnis Sims were married on May 30, 1946 and divorced on November 19, 1975. On September 12, 1977 Winston H. Sims married Elizabeth Franklin Sims (Elizabeth). Winston H. Sims (decedent) died on July 22, 1981 while married to Elizabeth; they were married a little more than three years and seven months.
When decedent and Marcella were divorced the decedent's age was 49 years and 10 months. At that time decedent's creditable *994 service in the Federal Civil Service Retirement System totaled 23 years and 5 months, including four years of military service time allowed him by law. On the date of his death, decedent's creditable service, including the military service time, totaled 29 years and 1 month; decedent was 54 years and 10 months old when he died.
Decedent was employed as an air traffic controller from June 18, 1956 until he died. His "average pay", as defined in 5 U.S.C.A. § 8331 et seq., was $27,337.
Marcella and decedent litigated their community property dispute through the supreme court which rendered its decision on rehearing on May 19, 1978. Sims v. Sims, 358 So.2d 919 (La.1978). The court concluded that Marcella "is entitled to a declaration at this time of her interest attributable to the community of any such (retirement) payments, if and when they become due in the future" and held that "the defendant wife has a one-half interest in compensation to the plaintiff husband which is attributable to that period." At pages 923 and 924.
When decedent died he had neither retired nor applied for retirement benefits; he was employed on the date of his death.
Elizabeth has been receiving a widow's death benefit provided for by 5 U.S.C.A. §§ 8341 and 8342. The gross amount per month was $740 from August, 1981 until April, 1983 and was $768 from May, 1983 onward.

TRIAL COURT
This proceeding was initiated by Marcella against decedent's succession and Elizabeth, to have the alleged indebtedness of the succession determined by applying the formula stated in Sims v. Sims, supra, a necessary first step, Marcella asserts, because the debt is "an undetermined sum." Alternatively, Marcella alleged that "she has certain rights directly against Elizabeth Sims, or that the Succession has certain rights against Elizabeth Sims" and because Elizabeth "receives this annuity... as the agent of the Succession" she should be required "to pay said annuity over to petitioner, either until the claim presented in paragraph 5 (sic) is paid, or in the percentages set forth in the judgment referred to in paragraph 3."
The district court tried the matter entirely on stipulated facts and memoranda of authorities submitted by the parties and rendered detailed written reasons for judgment three months later. The court held Elizabeth not liable for any indebtedness, held the succession liable to Marcella for $7,223.48, and held that federal law preempted "allowing or recognizing a claim by Marcella Sims, or by the succession against the survivor benefits of Elizabeth" that either "might have had against" her.
The lower court sustained Marcella's plea of res adjudicata as to her claim against the succession but rejected the plea as to Elizabeth in her individual capacity. The plea was based on the supreme court decision in Sims v. Sims, supra, alluded to above.

ASSIGNMENTS OF ERROR
Appellant Marcella Simmons urges twelve numbered assignments of error which we regroup and state in summary form, thusly. The trial court erred:
1. In its holding that federal statutes, regulations, and jurisprudence preempt Louisiana's community property law, thereby protecting a federally conferred widow's survivor benefit from allocation by a state court to satisfy a judgment in favor of a former wife against the surviving widow individually, the former husband during his lifetime, or against the succession of the former husband;
2. By holding that res adjudicata was not applicable to defendant-appellee, Elizabeth Franklin Sims, surviving spouse of the judgment debtor in previous community property litigation concluded before judgment debtor's remarriage; and
3. In calculating the amount owed plaintiff-appellant by the succession of decreased former husband.
*995 Appellant succession assigns as error by the lower court its finding that: (1) the succession of Winston H. Sims was liable to plaintiff-appellant, Marcella Sims, for anything; and (2) Louisiana law has not been preempted by federal law insofar as liability of the succession to plaintiff-appellant is concerned.

ISSUES
Plaintiff-appellant's brief enumerates sixteen issues; we regroup and state in summary form the issues which revolve around three central themes, namely res adjudicata, federal law preemption, and calculation of plaintiff-appellant's award against decedent's succession. They are as follows:
1. Are all the essential elements of res adjudicata present in the case at bar, thus making the supreme court decision involving plaintiff-appellant and her former husband binding on the second wife who survived him, for purposes of determining the amount of money owed and enforcing the judgment, absent privity of contract between the judgment debtor husband and his surviving wife in community?
2. Does federal law preempt the decision of the supreme court rendered in prior community property litigation?
3. Was the district court authorized to hold that a judgment of the supreme court in previous community property litigation between the former wife and the deceased former husband will not be affected by its holding that federal law preempts Louisiana law in determining whether survivor annuity paid the surviving spouse is not subject to attachment by former wife as judgment creditor of deceased former husband?
4. Did the district court correctly calculate the amount owed by the succession of Winston H. Sims to plaintiff-appellant?
Defendant-appellant succession's brief raises the issue whether the district court judgment holding the succession liable for a specific sum of money is legally supportable since the decedent "accrued no retirement rights yet the trial court held the estate liable for a debt springing from the retirement rights" and the debt "had not come into existance (sic) at the time of Mr. Sims's (sic) death"?

RES ADJUDICATA
The litigation culminating in Sims v. Sims, 358 So.2d 919 (La.1978) was between Marcella and Winston H. Sims and the issue before the Supreme Court of Louisiana was "the determination of a divorced wife's interest in her former husband's pension rights, insofar as they are attributable to his employment during the existence of the community." At 920. In its decree on rehearing the court, per curiam, "ordered, adjudged, and decreed that there be judgment in favor of the defendant, Mrs. Marcella McGinnis Sims, and against plaintiff, Winston H. Sims, recognizing and declaring her interest in any annuities, lump-sum payments, or other benefits from the Civil Service Retirement and Disability Fund, 5 U.S.C.A. § 8331 et seq., to or for her husband, Winston H. Sims, as a result of his federal employment and or service credit rights earned during the existence of the community between the plaintiff and the defendant." At 926. The necessary elements of res adjudicata are set out in La. C.C. art. 2286, which states:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
The first element, i.e., the thing demanded, was not established by the stipulated facts. In Sims, supra, the thing demanded was Marcella's proportionate share of the employee-husband's retirement rights based on age and service requirements which had not been satisfied when the community terminated, in reality an expectation because no "right" had "vested" at that juncture. In the case at Bar, Marcella *996 demanded a proportionate share of the "survivor annuity" being paid Elizabeth as the surviving widow of the deceased employee-member. The survivor annuity is not based on the age of the deceased employee-member or on "creditable service" the same way as is a straight retirement. A survivor annuity is owed an employeemember's widow or widower "if an employee or Member dies after completing at least 18 months of civilian service". 5 U.S.C.A. § 8341(d). "Widow" is defined as "the surviving wife of an employee or Member who(A) was married to him for at least 1 year immediately before his death:". 5 U.S.C.A. § 8341(a)(1).
A survivor's annuity is not paid to the employee-member. By definition the term "survivor annuities" is excluded from the term "retirement benefits". 5 C.F.R. § 831.1702. To sustain plaintiff-appellant's contention that the retirement benefits which were adjudicated by the supreme court in Sims v. Sims, supra, are "the same" as the survivor annuity provided for by 5 U.S.C.A. § 8341(d), the apportionment of which is the object of the case at Bar, would necessitate our ignoring federal statutes and regulations which distinguish the two benefits.
Because plaintiff-appellant's demand is for a thing or object different than the object litigated in Sims v. Sims, supra, the plea of res adjudicata as to defendant-appellee, Elizabeth Sims, is without merit.
"In this state, the doctrine of res judicata is stricti juris; any doubt concerning application of the principle of res judicata must be resolved against its application. (citations omitted). The doctrine of res judicata cannot be invoked unless all its essential elements are present, (citation omitted), and each necessary element must be established beyond all question. (citation omitted)." Hancock v. Lincoln American Life Insurance Co., 278 So.2d 561, 564 (La.App. 1st Cir.1973). (Emphasis ours).

PREEMPTION
The decedent's attained age and creditable service at the time of his death qualified him for "immediate retirement", i.e., entitled to an annuity without waiting for any other event than applying for it. 5 U.S.C.A. § 8336(e) and § 8345(i)(1). He did not file an application for benefits. Filing an application within certain time frames with the Office of Personnel Management and separation from "the service" or cessation of "pay" and meeting "age requirements" are prerequisites for "an annuity of an employee". 5 U.S.C.A. § 8345(b) and (i)(1); 5 C.F.R. § 831.501(a & b); 5 C.F.R. § 831.701(a); Riggs v. Office of Personnel Management, 709 F.2d 1486 (C.A., Fed.Cir. 1983); Sonnabend v. United States, 175 F.Supp. 150, 146 Ct.Cl. 622 (1959). Substantial compliance with a statute and regulations requiring an application by an employee who meets age and service requirements can, in some instances, suffice. "The courts always hesitate to apply a stern lettering when it runs counter to the whole stream of human experience and reaches a conclusion that no reasonable person would wish." Sonnabend v. United States, supra, 175 F.Supp. at 153.
Unlike Henry Sonnabend, whose initial application for retirement had not been withdrawn and whose second application (following reinstatement and subsequent lay-off) was completed but not "actually filed" when Mr. Sonnabend died while waiting for a required medical certificate to arrive, Winston H. Sims not only did not fill out application for retirement annuity, insofar as the stipulated facts show, he did not, as did Mr. Sonnabend, tell "his wife, his family, his fellow employees, ... everybody except the neighborhood dogs, who probably were not interested anyway", (Sonnabend, supra, 175 F.Supp. at 152-153), that he had completed but not mailed an application within the time frame provided for in 5 C.F.R. § 831.501(b) to take effect as provided for in 5 C.F.R. § 831.701(a)(1).
5 C.F.R. § 831.701 is the regulation governing effective dates of annuities. Subsection "d" states that "survivor annuities commence as provided in § 831.1002". 5 C.F.R. § 831.1001 permits "a survivor of a *997 deceased employee, member, or annuitant, or someone acting in his behalf" to "file an application for annuity at any time after the death of the employee, member or annuity." § 1002(a) states that "a survivor annuity payable from the Civil Service Retirement and Disability Fund commences the day after (1) death of the employee, member, or annuitant, ...". 5 U.S.C.A. § 8341(d) is to the same effect.
5 C.F.R. § 831.1102, found in subpart "K" of part 831, defines the term "annuitant" as "an individual who, on the basis of his service, or as a survivor annuitant, has met all the requirements of" 5 U.S.C.A. § 8331 et seq. "for title to an annuity and has filed claim therefor". This definition is consistent with 5 U.S.C.A. § 8901(3), as amended by P.L. 95-583, effective November 2, 1978.
5 U.S.C.A. § 8347(a) charges the Office of Personnel Management to administer § 8331 et seq. and authorizes it to "prescribe such regulations as are necessary and proper to" administer the law, subject only to exceptions provided in the statute. Acting pursuant to that congressional mandate, OPM adopted and promulgated 5 C.F.R. §§ 831.101 through .2107. § 831.101(a) states that "OPM has charge of the adjudication of all claims arising under" 5 U.S.C.A. § 8331 et seq. "and of all matters directly or indirectly concerned with these adjudications".
5 C.F.R. § 831.1701 through .1711, effective March 7, 1980, was adopted and promulgated to implement 5 U.S.C.A. § 8345(j), enacted by P.L. 95-366, "to comply with a provision for the apportionment of retirement benefits in a state court order, decree, or court-approved property settlement in connection with the divorce, annulment of marriage, or legal separation of a Federal employee or retiree". § 831.1701 et seq. "prescribes the procedures to be followed by: (a) a former spouse when applying for apportionment of an individual's retirement benefits pursuant to section 8345(j) of title 5, United States Code". § 831.1702 defines, inter alia, "individual" and "retirement benefits" as follows:
"`Individual' means a separated Federal employee who has filed an application for ... a civil service annuitant (sic)."

"`Retirement benefits' means employee annuities ... but does not include survivor annuities or lump sum payments made pursuant to section 8342(c), (d)-(f) of title 5, United States Code."
§ 831.1709(b) states that .1701 et seq. apply to any court order issued "before, on, or after September 15, 1978" subject to the proviso that "the former spouse will not be entitled to any payments until: (1) the individual files a claim for his/her benefit, and (2) all submissions required by § 831.1704 have been received by the Associate Director for Compensation". § 831.1710(a) provides that "retirement benefits are subject to apportionment by court order only while the individual is living." § 831.1711(c) states that "because the former spouse is entitled to payments only while the individual is living, the former spouse shall be personally liable for any payments which he/she receives after the death of the individual".
The foregoing statutes and regulations make it clear that the terms "retirement annuity" or "retirement benefit" are not synonymous with "survivor annuity". A retirement benefit or annuity is based on five or more years of creditable service and an attained age specified by statute. No retirement benefit or annuity can be paid the individual who was employed by the federal government until he/she is separated from service and only then if the former employee applies for the benefit. In contrast, a survivor annuity, in the case of a surviving spouse, is based on a minimum of 18 months of service by the deceased employee and marriage to the deceased employee "at least 1 year immediately before... death." 5 U.S.C.A. § 8341(a) and (d).
While the decedent, Winston H. Sims, had 29 years and one month of creditable service and was 54 years and 10 months old when he died, he had neither retired nor made application for retirement. *998 Therefore, no "retirement benefit" is payable to anyone under the facts of the case at Bar. Only a "survivor annuity" is authorized, and being paid Elizabeth, under the applicable law as applied to the facts of this case. Federal statutes and regulations do not provide for divisibility of a "survivor annuity" for the simple reason that a deceased employee can have but one "surviving wife" or "surviving husband".
Unfortunately for plaintiff-appellant, Marcella Sims, the "Civil Service Retirement Spouse Equity Act of 1984", (P.L. 98-615, 98 Stat. 3195), effective May 8, 1985, amending 5 U.S.C.A. § 8331 et seq., comes too late to help her. A new sub-section, designated as "(h)", was added to § 8341; it reads, in pertinent part, as follows:
"(h)(1) Subject to paragraphs (2) through (5) of this subsection, a former spouse of a deceased employee, Member, or annuitant is entitled to a survivor annuity under this subsection, if and to the extent provided for in an election under section 8339(j)(3) of this title, or in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

"...
"(3) The commencement and termination of an annuity payable under this subsection shall be governed by the terms of the applicable order, decree, agreement, or election, as the case may be, except that any such annuity(A) shall not commence before(i) the day after the employee, Member, or annuitant dies, ...". (Emphasis ours).
The "Civil Service Retirement Spouse Equity Act of 1984" is retroactive to the extent that it applies to a former spouse of an employee who died before the effective date of P.L. 98-615 only if: (1) "the former spouse's marriage to the employee or Member was dissolved after September 14, 1978"; (2) "the former spouse was married to the employee or Member for at least ten years during periods of creditable service under section 8332 of title 5, United States Code"; (3) "the former spouse has not remarried before age fifty-five after September 14, 1978"; (4) "the former spouse files an application with the Office within thirty months after the date of enactment of this Act"; and (5) "the former spouse is at least fifty years of age at the time of filing such application." 5 U.S.C.A. § 8907, as amended.
The parties stipulated that the marriage between Marcella and Winston Sims was dissolved on November 19, 1975. Marcella therefore does not meet the first requirement, stated above, for P.L. 98-615 to apply retroactively to the facts of this case. Thus it matters not that the stipulated facts establish Marcella's having fulfilled the second and fifth requirements and could fulfill the fourth requirement. Although the stipulated facts do not show whether Marcella has remarried at all or before June 9, 1980, i.e., "before age fiftyfive after September 14, 1978", Marcella's date of birth having been stipulated to be June 9, 1925, the third requirement for retroactivity, it is unimportant because the primary requirement, namely date of dissolution of the marriage, certainly was not met.
Because P.L. 98-615 cannot be utilized to resolve the controversy between plaintiffappellant, Marcella, and defendant-appellee, Elizabeth, it is necessary to decide whether federal statutes and regulations preempt Louisiana community property law, thus precluding her acquiring a proportional interest in Elizabeth's survivor annuity for an indeterminate time or until such time as her judgment against the succession of decedent is satisfied in full.
We hold that federal law preemption bars any Louisiana court from declaring Marcella, a former spouse of the deceased former federal civil service employee not retired on the date of death, entitled to any portion of the survivor annuity being paid to Elizabeth, the decedent's surviving spouse, either individually or in her representative capacity as administratrix of the succession of Winston H. Sims until the judgment rendered against the succession *999 in the lower court in this case has been satisfied.
Commenting on the legislative history of the source of 5 U.S.C.A. § 8345(j), the United States Court of Appeal, Fifth Circuit, per Reavley, J., in McDannell v. U.S. Office of Personnel Management, 716 F.2d 1063 (C.A.5, 1983), made the following pertinent observations:

"H.R. 8771, 95th Cong., 2d Sess. (1978) became Public Law 95-366 and added sub-section (j) to 5 U.S.C. § 8345. The bill also amended 5 U.S.C. § 8346(a) by making its anti-assignment provisions inapplicable to § 8345(j). ... At the same time, the legislation seeks to defer to state courts, traditionally the arbiters in divorce proceedings, by allowing them to determine how the civil service benefits should be split between the couple. 124 Cong.Rec. 419 (statements by Congresswomen Spellman and Schroeder).

"The legislation made clear that state courts could, if they were so inclined, divide the retirement benefits between the divorcing spouses. Before its enactment, payments under the civil service retirement system were not assignable or subject to other legal process. Senate Report at 2. Thus, the law was unclear as to whether state courts even had the power to divide these benefits in the face of the Supremacy Clause. See 124 Cong.Rec. 420 (Statement by Congresswoman Schroeder). The legislation exempted the division of civil service retirement benefits under § 8345(j) from the anti-assignment provision in § 8346(a), and made clear that federal law did not preempt state court property divisions of these benefits. The congressional concern was well-founded, for the Supreme Court later invoked the Supremacy Clause in prohibiting state court community property divisions of other federal retirement benefits. See McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (holding military nondisability retirement pay not subject to division)[*]; Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (holding Railroad Retirement Act retirement benefits not subject to division).

"However, the bill as finally passed was clearly a compromise proposal. An earlier bill, H.R. 3951, 95th Cong., 1st Sess. (1977), would have mandated that the former spouse receive a pro rata share of the retiree's benefits, based on a statutory formula, if the couple had been married at least twenty years ...." 716 F.2d at 1065. (Emphasis ours).
In McDannell, supra, the couple had obtained a divorce in a Texas state court which had divided the property belonging to them, "including the federal civil service retirement benefits that William was receiving". 716 F.2d at 1063.
"OPM has charge of the adjudication of all claims arising under subchapter III of chapter 83 of title 5, United States Code, and of all matters directly or indirectly concerned with these adjudications." 5 C.F.R. § 831.101(a); 33 FR 12498, September 4, 1968, and 44 FR 76747, December 28, 1979. The source for that authority is 5 U.S.C.A. § 8347. "Sub-chapter III of chapter 83" etc. is 5 U.S.C.A. § 8331 et seq.
5 U.S.C.A. § 8346(a) provides that "the money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as may be provided by Federal law".
The unambiguous wording of 5 U.S.C.A. §§ 8345(j) and 8346(a), as well as the legislative history of the source provisions of P.L. 95-366 makes it abundantly clear that apportionment of survivor annuities was not contemplated. Regulations adopted and promulgated by OPM, pursuant to congressional authority, 5 U.S.C.A. § 8347, clearly distinguish "retirement annuity" from "survivor annuity" and declare, in 5 *1000 C.F.R. § 831.1702, the exclusion of "survivor annuities" from the definition of "retirement benefits" which Congress declared apportionable by P.L. 95-366 provided certain statutory and regulatory requirements are complied with.
Federal statutes and regulations governing survivor annuities provided for by 5 U.S.C.A. § 8341 leave no room for intrusion by states into the federal scheme of things.
In Fidelity Federal Savings and Loan Association v. De La Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the United States Supreme Court, per Blackmun, J., as organ of the Court, reasoned as follows in declaring a California statute, upheld by California's Supreme Court, preempted by a federal regulation:
"The pre-emption doctrine, which has its roots in the Supremacy Clause, ..., requires us to examine contressional intent. Pre-emption may be either express or implied, and `is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' (citation omitted). Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because `[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because `the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because `the object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose.' (citation omitted).
"Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when `compliance with both federal and state regulations is a physical impossibility.' (citation omitted), or when state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' (citations omitted). These principles are not inapplicable here simply because real property law is a matter of special concern to the States: `The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.' (citations omitted).
"Federal regulations have no less preemptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily. (citation omitted). When the administrator promulgates regulations intended to pre-empt state law, the court's inquiry is similarly limited:
`If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' (citations omitted).
"A pre-emptive regulation's force does not depend on express congressional authorization to displace state law; moreover, whether the administrator failed to exercise an option to promulgate regulations which did not disturb state law is not dispositive. (citation omitted)....
"... [T]he Board's intent to pre-empt the Wellenkamp [v. Bank of America, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (Cal.1978)] doctrine is unambiguous. The due-on-sale regulation plainly provides that a federal savings and loan `continues to have the power' to include a due-on-sale clause in a loan instrument and to enforce that clause `at its option'. (citation omitted). The California courts, in contrast, have limited a federal association's right to exercise a due-on-sale *1001 provision to those cases where the lender can demonstrate that the transfer has impaired its security.
"...
"Any ambiguity in [the federal regualtion's] language is dispelled by the preamble accompanying and explaining the regulation. The preamble unequivocally expresses the Board's determination to displace state law:
"...
"... The language and history of [the federal statute] convince us that Congress delegated to the Board ample authority to regulate the lending practices of federal savings and loans so as to further the Act's purposes, and that ... [the regulation] is consistent with those purposes."
102 S.Ct. at 3022-3024. (Bracketed material and parentheses supplied).
The rationale of Fidelity Federal Savings and Loan Association, supra, was followed in Capital Cities Cable, Inc. v. Crisp, 467 U.S. ____, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) in a unanimous holding that FCC regulations preempted an Oklahoma statute requiring deletion of wine advertisements from cable telecast programs originating outside Oklahoma.
The federal concerns reflected by the two cited United States Supreme Court decisions are no less evident in the case at bar. Accordingly, we hold that federal statutes and regulations alone determine who is entitled to a survivor's annuity and exempt that annuity from execution, levy, attachment, or other legal process "except as may be provided by Federal laws". The district court correctly held state property laws in conflict with the federal statutes and regulations involved in the instant case are pre-empted by those federal statutes and regulations.

SUCCESSION'S LIABILITY
The Louisiana Supreme Court decisions in Sims v. Sims, supra, and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975) and the Third Circuit Court of Appeal decision in Thrash v. Thrash, 387 So.2d 21 (La.App. 3rd Cir.1980) "hold that upon dissolution of the community of acquets and gains existing between spouses, each of the spouses has an interest in the right (inchoate or vested) of the spouse who is the member of a retirement system proportioned on the amount of the community contributions made to the retirement system during the existence of the community." Louisiana State Troopers Association, Inc. v. Louisiana State Police Retirement Board, 417 So.2d 440 (La. App. 1st Cir.1982). The three cited cases do not "stand for the proposition that the right to retirement benefits becomes vested prior to the achievement of eligibility". Id. at 444.
In T.L. James & Co., Inc. v. Montgomery, supra, on rehearing, Tate, J., as organ of the Court, reasoned that:
"... When a community is dissolved, the employee's spouse is thus entitled to be recognized as the owner of one-half the value of the right-to-share, insofar as attributable to the contributions paid into the fund as deferred compensation to the employee during the existence of the community (i.e., even though it may not by the contract be payable at that time). (citations omitted). However, when the proceeds do become payable under the contract to the employee or his beneficiary or estate, the spouse is entitled at that time to receive payment as owner of her share of the proceeds, based upon the value of the right-to-share acquired during the community formerly existing between her and the wage earner." 332 So.2d at 851. (Emphasis ours).
The James decision, or rehearing, held, inter alia, that "although the contractual beneficiary may receive in full ownership the share of the funds passing to him by virtue of the decedent's contractual designation of him as beneficiary, he does so with the obligation to account to any complaining forced heir or spouse in community if his receipt of proceeds violates either the former's legitimate or the latter's community *1002 ownership rights ..." 332 So.2d at 855.
The decision in Sims v. Sims, supra, resulted from our supreme court's application of the rationale of James, supra, to the facts in dispute between plaintiff-appellant herein and her former husband whose succession, defendant-appellant herein, was cast in judgment in the instant suit for one-half of the contributions made by the decedent during the existence of the community between them.
Tucker v. District Attorney's Retirement System, 445 So.2d 514 (La.App. 3rd Cir.1984) was a suit by a former spouse against the surviving spouse and the retirement system seeking "to have a portion of the retirement benefits received by the second wife as beneficiary recognized as an asset of the community formerly existing between the plaintiff and the deceased." at 515. The deceased member of the retirement system "had a total creditable service in the District Attorney's Retirement System of 32.75 years. The portion of pension attributable to creditable service during the existence of the community [with plaintiff, first wife] was 18.75 years. The deceased husband [retired on September 1, 1981 and] received [six monthly checks totaling] $12,735.36 in retirement benefits prior to his death." Succession of Tucker, 445 So.2d 510, 513 (La.App. 3rd Cir.1984). The court of appeal affirmed the trial court's holding "that the retirement benefits were a community asset" because the community property partition agreement between the deceased retiree and the former spouse in 1967 "did not transfer either party's rights or interests in the retirement benefits to the other party" and that "neither party has succeeded to the ex-spouse's interest". At 513-514. (Brackets ours).
Succession of Tucker, supra, makes it clear that a previously unpartitioned community asset, "omitted from the original community property settlement through mutual oversight", is a suitable object "for a supplemental partition under C.C. art. 1401" in the succession proceedings of the deceased retiree. 445 So.2d at 513. Jackson v. State of Louisiana, Teachers' Retirement System of Louisiana, 407 So.2d 416 (La.App. 1st Cir.1981) observed that under the proper set of circumstances "the surviving partner in community (surviving spouse) may be entitled to an accounting of community contributions to the retirement system from the decedent's estate or his heirs, ..., but not from the beneficiary or the retirement system". At 418. In Jackson, supra, the ownership of a member's accumulated contributions was the matter in controversy, the member having died before he had qualified for retirement and while still in service. The deceased member's designated beneficiary, his former spouse, prevailed in the contest between her and the member's surviving spouse.
The district court, in the case at Bar, held the succession of Winston H. Sims indebted to Marcella Sims in the amount of $7,223.48, plus interest from date of judgment, representing one-half of the total contributions made during the community existing between Winston and Marcella Sims. The court reasoned, in pertinent part, that: "the survivor annuity ... [being paid Elizabeth] is not subject to any claim and since no retirement benefits are available, the value of the interest of Mrs. Marcella Sims can only be the value of one-half of the community contributions to the system or nothing at all. The language of Sims is sufficiently clear to indicate that the action analogized to a partition in kind included at a minimum the reimbursement of Mrs. Marcella Sims' contributions". (Brackets ours).
We hold that the district court's assessment of the change of circumstances between the time the supreme court decided Sims v. Sims, supra, in 1978 and this litigation, and its application of the principle first announced in James, supra, and applied in Sims v. Sims, supra, are correct.
Accordingly, the judgment of the district court is affirmed. Costs in this court and in the court below are assessed against *1003 defendant-appellant Succession of Winston H. Sims. C.C.P. art. 2164.
GROVER L. COVINGTON, C.J., concurs.
NOTES
[*] McCarty v. McCarty was legislatively overruled by P.L. 97-252 (10 U.S.C.A. § 1408(c)(1), the "Uniformed Services Former Spouses Protection Act", adopted September 8, 1982.