543 So.2d 940 (1989)
SUCCESSION OF Earl Ernest EGAN, Jr.
No. 88-CA-683.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
Steven E. Hayes and William C. Harrison, Jr., Metairie, for plaintiff/appellant.
Bernard M. Plaia, Jr., Metairie, for defendant/appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
WICKER, Judge.
Ilsa Tatum Egan, a surviving spouse, appeals a judgment ordering certain reimbursement to Donna Egan Pechon, Dawn M. Egan, and Earl E. Egan, III, the children and forced heirs of the decedent, Earl Ernest Egan, Jr. We reverse.
Ilsa and Earl married on October 22, 1980. It was Earl's second marriage, and he had children from his first marriage. Earl executed a will in notarial form on June 24, 1986, and died on December 1, 1986. Ilsa, his widow, probated Earl's will on May 18, 1987; and on May 21, 1987, Earl's children filed a petition for injunctive relief and rules to annul probate, appoint a succession representative, traverse the detailed descriptive list, take inventory, and vacate the marital residence.
Among the assets of the succession were several individual retirement accounts, some of which Earl had begun prior to his marriage to Ilsa. Contributions were made from community funds following the marriage. Earl had designated Ilsa as the sole beneficiary of these I.R.A.'s. The trial judge ruled that the beneficiary designation did not transfer Earl's community or separate interest in these I.R.A.'s to Ilsa. Ilsa applied for writs on this ruling; but a panel of this court refused writs, finding that judgment an interlocutory one and further finding that Ilsa had not shown irreparable injury. # 88-C-255.
A judgment on the merits awarded the I.R.A.'s to Ilsa but also ordered
that the Decedent's forced heirs, Donna Egan Pechon, Dawn M. Egan and Earl E. Egan, III, inheriting through the Decedent's estate, are entitled to reimbursement for the Decedent's community and separate property interest in and to the Decedent's Individual Retirement Accounts from the designated beneficiary, Ilsa Tatum Egan, amounting to Seven Thousand Seven Hundred Forty-Seven and No/100 ($7,747.00) Dollars, cash.
The judgment also annulled the probate of Earl's testament, finding the testament invalid as to form as required by La.R.S. 9:2442.
Ilsa appeals only that ruling by the trial judge which dealt with the beneficiary designations on the I.R.A.'s:

*941 [T]he beneficiary designations on the individual retirement accounts of the Decedent, Earl Ernest Egan, Jr., designating his surviving spouse, Ilsa Tatum Egan as beneficiary, do not transfer, under Louisiana law, the Decedent's separate or community property interest in and to said IRAs. This situation is distinguished from the Supreme Court Case of T.L. James & Company, Inc. v. Montgomery, 332 So.2d 834 (La.1976), in that said case delt [sic] with an employer's pension plan, the same being subject to strict guidelines, as opposed to individual retirement accounts (emphasis by the trial judge).
Individual retirement accounts were created by Pub.L. 93-406, Title II, Section 2002(b) on September 2, 1974. (The law has been amended in 1976, 1978, twice in 1980, in 1981, 1982, 1983, 1984 and 1986.) The provisions are found in the Internal Revenue Code, 26 U.S.C. Section 408:
(a) Individual retirement account. For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries (emphasis added), ...
....
(d)(3)(C)(ii) Inherited individual retirement account or annuity.An individual retirement account or individual retirement annuity shall be treated as inherited if
(I) the individual for whose benefit the account or annuity is maintained acquired such account by reason of a death of another individual, and
(II) such individual was not the surviving spouse of such other individual.
....
(g) Community property laws.This section shall be applied without regard to any community property laws.
....
We have found no federal cases dealing specifically with the issues presented here: whether a beneficiary designation transfers a decedent's separate and/or community interest in his I.R.A.; and whether his beneficiary is required to reimburse the decedent's separate and community estates, to the benefit of his surviving major children, for the contributions made to those I.R.A.'s. The three above-cited provisions, however, would seem to bear on the issue:
(1) the I.R.A. is for the exclusive benefit of the individual or his beneficiaries;
(2) a surviving spouse is not considered to have inherited the I.R.A.; and
(3) our community property laws do not apply to I.R.A.'s.
Specific provisions dealing with payment of benefits are found in Louisiana's legislation.
Section 2449. Individual retirement accounts; payment of benefits
A. Any benefits payable by reason of death from an individual retirement account established in accordance with the provisions of 26 U.S.C. 408, as amended, shall be paid as provided in the individual retirement account agreement to the designated beneficiary of the account. Such payment shall be a valid and sufficient release and discharge of the account holder for the payment or delivery so made and shall relieve the trustee, custodian, insurance company or other account fiduciary from all adverse claims thereto by a person claiming as a surviving or former spouse or a successor to such a spouse.
B. No account holder paying a beneficiary in accordance with this Section shall be liable to the estate or any heir of the decedent nor shall the account holder be liable for any estate, inheritance, or succession taxes which may be due the state.
C. The provisions of this Section shall apply notwithstanding the fact the decedent designates a beneficiary by last will and testament.
R.S. 9:2449 (emphasis added). See also R.S. 6:766(5)(a-c) which is substantially the same.
Section 33. Pension, annuity, and gratuity payment by employers
*942 The following shall be exempt from all liability for any debt except alimony and child support:
(1) All pensions, all proceeds of and payments under annuity policies or plans, all individual retirement accounts, all Keogh plans, all simplified employee pension plans, and all other plans qualified under Sections 401 or 408 of the Internal Revenue Code. However, an individual retirement account, Keogh plan, simplified employee pension plan, or other qualified plan is only exempt to the extent that contributions thereto were exempt from federal income taxation at the time of contribution, plus interest or dividends that have accrued thereon. No contribution shall be exempt if made less than one calendar year from the date of filing for bankruptcy, whether voluntary or involuntarily, or less than one calendar year from the date writs of seizure are filed against such account or plan.
R.S. 20:33.
We can also look at those provisions of community property, succession, and retirement law which might arguably apply. La. R.S. 23, Labor and Worker's Compensation, provides:
Section 651. Definitions
(1) "Plan" shall mean any arrangement, agreement, contract, plan, system or trust whereby a participant acquires an enforceable right to retirement income or other compensation where payment is deferred until the termination of employment or thereafter, regardless of the method of calculating the amount of plan benefits or the mode of their distribution. Included in this definition are plans which provide pension, retirement, disability or death benefits and deferred compensation by employment, agency, trade union, stock bonus, stock ownership, stock option and profit sharing plans. The term plan shall also include employee pension benefit plans as defined by Section 3(2) of the Employee Retirement Income Security Act of 1974, Public Law 93-406, 88 Stat. 829.
(2) "Benefit" shall mean anything of value payable or distributable to a participant, his spouse, a beneficiary, to a participant's estate or to any other person pursuant to the terms of the plan.
(3) "Beneficiary" shall mean any person, including the participant, entitled to receive benefits under a plan.
(4) "Participant" shall mean an employee or other person entitled to participate and participating or formerly participating in a plan.
(5) "Designation form" shall mean any document by which a plan permits a participant to name a beneficiary to receive plan benefits.
Section 652. Designation form
(1) Any designation form permitted by a plan shall be valid for the purpose of naming a beneficiary, or selecting the mode of payment of plan benefits, or both.
(2) A designation form need not be in testamentary form, nor authentic form, nor in any form other than that permitted or required by the plan.
(3) As is provided by R.S. 23:638, benefits may be paid in reliance on a properly executed designation form until the payor receives notice of an adverse claim.
(4) The designation form shall remain in effect until revoked, terminated, amended or modified as provided by the plan. Unless otherwise specifically provided by the plan, a designation form is not deemed revoked, invalidated or otherwise affected by any act or occurrence which would have the effect of revoking, invalidating or otherwise affecting a will.
The Civil Code provides:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property *943 not classified by law as separate property.
La.C.C. art. 2338.
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used;
. . . . .
La.C.C. art. 2341.
In the absence of valid testamentary disposition, the undisposed property of the deceased devolves by operation of law in favor of his descendants, ascendants, and collaterals, by blood or by adoption, and in favor of his spouse not judicially separated from him, in the order provided in and according to the following articles.
La.C.C. art. 880.
If the deceased spouse is survived by descendants, and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
....
A usufruct authorized by this article is to be treated as a legal usufruct and is not an impingement upon legitime.
If the usufruct authorized by this article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be required by the naked owner.
La.C.C. art. 890.
The parties have not cited us to any cases which resolve the issues raised in this appeal. Every case cited by the parties is clearly distinguishable in one way or another. Nevertheless, a review of some of the cited jurisprudence is appropriate.
In T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975), on rehearing (1976) (cited by the trial judge) the court dealt with the status of employee retirement and profit sharing plans. The decedent/employee named as his beneficiary his son from his first marriage. The decedent was still married to his second wife, by whom he had another son, and was still employed at the time of his suicide. The court noted that life insurance proceeds, when there is a beneficiary named, form no part of a decedent's estate; but it also noted that life insurance is sui generis and had previously "refused to extend the rationale of the cases dealing with life insurance to other problems where the conflict is between the urge to bring about freedom of disposition and the fundamental and elementary principles of forced heirship and the community property system...." At 845. With regard to the retirement and profit-sharing plans, the Court found them to be property belonging to the community established by the decedent and his widow.
However, the forced heirs of the decedent and his first wife are entitled to an accounting to support any claim that some value of these benefits existed prior to the second marriage. In the event such a contention is supported, the claims of the forced heirs and the first wife that this value is attributable to the first community must be given effect.
At 846. Having initially ruled that a designation of beneficiary was invalid since it was not in testamentary form, the Court reconsidered that issue on rehearing. It reiterated
This contractual agreement [the designation of beneficiary], as we have held, cannot (in the absence of legislation so authorizing) prejudice the rights of forced heirs or the community ownership of spouses of the wage earner, essentially, because rights of forced heirship and of spouses in community acquisitions are fundamental concepts of our legal system.
At 853. The Court concluded
[S]o long as the constractual [sic] devolution of the decedent's interest to the beneficiary *944 does not infringe upon the legitime of a complaining forced heir nor upon the community ownership of a complaining spouse, no prohibition of law prevents the courts from recognizing the contractual rights of the beneficiary to the ownership of the proceeds (so acquired by reason of the contract between the deceased employee, his employer, and the respective plans).
At 854. Finally, the Court awarded to the first son as beneficiary the proceeds of the retirement and profit-sharing plans, subject to the legitime, if it had been invaded, of the second son and the community property claims of the widow. The claims of the first wife were dismissed, since she had pleaded community contributions only in the alternative should her son's claims as beneficiary not be recognized.
The Supreme Court considered in Sims v. Sims, 358 So.2d 919 (La.1978), the interest of a spouse in her husband's retirement and held such retirement benefits to be an asset of the community. That case, however, arose out of partition litigation between husband and wife; and there were no other parties involved.
The case of Tucker v. District Atty.'s Retirement System, 445 So.2d 514 (La. App. 3rd Cir.1984) writ den. 447 So.2d 1080 (La.1984) dealt with an unpartitioned community existing from the decedent's first marriage. While his second wife was the beneficiary of his retirement benefits, contributions to those benefits were made during the first marriage. The court permitted a supplemental partition of these benefits.
An unmarried decedent, with illegitimate children and surviving parents, designated the defendant as beneficiary of his retirement benefits in Parish of East Baton Rouge v. Burrell, 429 So.2d 226 (La.App. 1st Cir.1983). The court held the illegitimate children were forced heirs and remanded the case for an evidentiary hearing on whether there were sufficient other assets to satisfy their legitime.
In Matter of Succession of Sims, 464 So.2d 991 (La.App. 1st Cir.1985), writ den. 467 So.2d 532 (La.1985), the court dealt with federal retirement benefits to which the decedent contributed during both his first and second marriages. His first wife litigated her entitlement to retirement benefits years earlier, resulting in a recognition of her interest in future retirement benefits. Sims v. Sims, supra. At the time of decedent's death he had not yet retired; and his widow, the second wife, was receiving a "survivor's annuity" and not "retirement benefits." The court held that federal law preempted our community property laws and that the first wife was barred from getting any portion of the annuity.
The district court, in the case at Bar, held the succession of Winston H. Sims indebted to Marcella Sims in the amount of $7,223.48, plus interest from date of judgment, representing one-half of the total contributions made during the community existing between Winston and Marcella Sims. The court reasoned, in pertinent part, that: "the survivor annuity... [being paid Elizabeth] is not subject to any claim and since no retirement benefits are available, the value of the interest of Mrs. Marcella Sims can only be the value of one-half of the community contributions to the system or nothing at all. The language of Sims is sufficiently clear to indicate that the action analogized to a partition in kind included at a minimum the reimbursement of Mrs. Marcella Sims' contributions". (Brackets ours).
At 1002.
The State paid to the decedent's widow and child the contributions he had made to the retirement system prior to his death, but his first wife was his named beneficiary. The court in Jackson v. State, Tchrs.' Retire. System, 407 So.2d 416 (La. App. 1st Cir.1981), held that the widow and children had to reimburse the retirement system so that it could in turn pay the beneficiary.
The surviving partner in community (surviving spouse) may be entitled to an accounting of community contributions to the retirement system from the decedent's estate or his heirs ... but not *945 from the beneficiary or the retirement system. Thus, we reject the contention that, as surviving spouse, she is entitled to be recognized as owner of one-half of the benefits attributable to contributions made during the existence of the community between her and the decedent.
At 418 (citations omitted) (emphasis added).
In Bendler v. Marshall, 513 So.2d 369 (La.App. 4th Cir.1987), writ den. 514 So.2d 1180 (1987), the decedent's federal retirement benefits were not considered in the partition with his first wife. After death, his second wife received a widow's annuity; and his first wife sued for the share attributable to the contributions made during her marriage to decedent. Reversing the trial court, which had awarded reimbursement to the first wife, and citing Matter of Succession of Sims, supra, the court held that the first wife was not entitled to a pro-rata share of the survivor's annuity and she was not entitled to any reimbursement from the widow. "While plaintiff is entitled to make a claim for reimbursement, she is not entitled to make that claim against the defendant, who is the decedent's surviving spouse and designated survivor for purposes of the decedent's annuity plan." At 371.
Our circuit, in dealing with the issues of military retirement pay and military insurance, held that the retirement was community property but the policy, acquired prior to the marriage, was separate property. Inzinna v. Inzinna, 456 So.2d 691 (La.App. 1984), writ den. 461 So.2d 317 (La.1984). The court recognized that the proceeds of the insurance policy were not subject to community claims but passed directly to the named beneficiary; however, the wife was entitled to one-half any increase in the policy's cash value attributable to community contributions. In this case, there were no claims other than those of the former husband and wife and neither party had died.
The issue in Flanner v. Succession of Flanner, 338 So.2d 355 (La.App. 3rd Cir. 1977), writ den. 340 So.2d 999 (La.1977), was the characterization of U.S. savings bonds in the names of decedent and his widow. The decedent's children from his first marriage sought to re-open the succession, which they had previously renounced in favor of their stepmother, so as to assert a right to these bonds. The court held that transfer of decedent's property interest in the bonds to his widow was valid, subject to any claims of forced heirs whose legitime was prejudiced.
The Third Circuit has considered the effect of an I.R.A. beneficiary designation, although neither party has cited Succession of McVay v. McVay, 476 So.2d 1070 (La.App.1985). The court was called upon to characterize, among other assets, an I.R. A. account payable to the decedent's widow as beneficiary. Children from decedent's prior marriage challenged the widow's claim that the I.R.A. should be excluded from the descriptive list of the succession's assets. The court held that the widow's position was the correct one, citing 26 U.S. C. Section 408(g) that "[t]his section shall be applied without regard to any community property laws." We agree with this conclusion.
The court went on, however, to analogize I.R.A. accounts to U.S. savings bonds, resulting in a further holding that the community of acquets and gains should be deemed to have included an amount equal to the I.R.A. amount, citing Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3rd Cir. 1976), writ den. 342 So.2d 217 (La.1977). We do not agree, believing that I.R.A. accounts are more like the retirement plans in T.L. James & Co., Inc. v. Montgomery, supra. There is no reason to treat I.R.A.'s differently from other retirement plans.
"When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages." La.C.C. art. 4.
We do not know whether or not the community existing between Egan and his first wife was fully partitioned or even if such a community existed. We also do not know whether the legitime of Egan's children has been satisfied by assets other than the I.R.A.'s at issue, although that *946 has been urged in brief. We do know the following facts by stipulation: (1) Ilsa is the sole owner of one-half the contributions made to the I.R.A.'s during her marriage to Egan; (2) Egan's interest in these I.R.A.'s, both separate and community, totals $7,747.00; and (3) Egan's children have received cash of $18,253.00, a house and lot, stock, household furnishings, and employee retirement benefits from the succession.
Absent a showing that community property rights of Egan's first wife, who is not a party, or forced heirship rights have been infringed, we see no justification for requiring Egan's widow and beneficiary to reimburse her stepchildren. No such showing has been made; and we therefore reverse the judgment of the trial court insofar as it requires reimbursement from Ilsa Tatum Egan to Donna Egan Pechon, Dawn M. Egan, and Earl E. Egan, III. Donna Egan Pechon, Dawn M. Egan, and Earl E. Egan, III must pay the costs of this appeal.
REVERSED.