FOIL, Judge.
This is an appeal from a judgment sustaining the defendant’s peremptory exception raising the objection of prescription. We reverse.
DISCUSSION
Gay Nell Traylor filed this suit to partition the community of acquets and gains existing between herself and her former husband, Shelton Traylor, over 11 years after the termination of the community. She filed a descriptive list in which she alleged that the community was comprised of two items of property: the marital home and her former spouse’s United States Government retirement benefits. In addition to requesting a partition of the community assets, Mrs. Tray-lor demanded an accounting by Mr. Traylor.
Mr. Traylor filed a peremptory exception asserting the objection of prescription under La.Civ.Code articles 2369 (3 years for an accounting) and 3499 (ten years for other personal claims). He contended that Mrs. Traylor did not have a right of action to partition his retirement benefits, and was instead limited to seeking an accounting for the community contribution to the federal retirement fund during the marriage. He asserted that the action for an accounting had prescribed by the passage of three years from the date of the termination of the community property regime under La.Civ.Code art. 2369.[1] The trial court agreed, and maintained the exception with respect to the retirement benefits.[2] This appeal followed.
The facts forming the basis for this appeal have been stipulated to and thus are not in dispute. The parties were married on January 23, 1965. On September 12, 1977, a suit for separation was filed, and a judgment of separation was signed on October 14, 1977. A suit for divorce was filed on October 21, 1978, and the judgment of divorce was signed on December 5, 1978. The parties stipulated that the community of acquets and gains terminated as of September 12, 1977.
In 1958, six years prior to the marriage, Mr. Traylor commenced working for the U.S. Postal Service. He retired from the service on May 2, 1989. Mrs. Traylor’s suit, in which she attempts to assert an ownership interest in those retirement benefits, was filed February 27, 1989, over 11 years after the termination of the community.
In this appeal, Mrs. Traylor asserts that the trial court erred in granting Mr. Tray-lor’s exception of prescription on the basis that the pension is, at least in part, a community asset which she is seeking to judicially partition. Under La.Civ.Code art. 817, the action for partition is imprescriptible. Thus, she contends, her suit to partition the community interest in the retirement benefits cannot be barred by the lapse of over 11 years between the termination of the community and the suit to partition that property.
While conceding that the action to partition community property is imprescriptible, Mr. Traylor contends that Mrs. Traylor does *89 not have a right of action to partition his federal pension under two theories. First, he insists that because he began working for the Postal Service prior to the marriage, the retirement benefits are entirely his separate property under Louisiana law. He argues that Mrs. Traylor would only have a right to an accounting for the enhancement of his separate asset by the community contributions to the retirement fund. Secondly, Mr. Traylor argues that as of September 12, 1977, the date of the termination of the community, federal law precluded a spouse from obtaining direct payment from a federal employee’s retirement fund. Because of the preemptive nature of federal law, Mrs. Tray-lor could not partition the retirement benefits, but was relegated to seeking an accounting for the community contributions to the retirement program. Under either theory, Mrs. Traylor did not have an action for partition but only had an action for an accounting, which prescribed under La.Civ.Code art. 2369 by the passage of three years. The validity of each of these arguments will be addressed in turn.
CLASSIFICATION OF THE RETIREMENT BENEFITS
Mr. Traylor argues that because he began working for the postal service prior to the marriage, and because his rights to the benefits vested prior to the marriage, the retirement benefits are entirely his separate property. However, Mrs. Traylor contends that the portion of the retirement benefits which accrued during the term of the community is a community asset, of which she has a one-half ownership interest. She relies principally on the case of Hare v. Hodgins, 586 So.2d 118 (La.1991), in which the Louisiana Supreme Court recognized that pension benefits are subject to mixed ownership. In Hare v. Hodgins, 586 So.2d at 122, the Court stated:
To the extent that the [pension] right derives from the spouse’s employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La.Civ.Code art. 2338; Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). Consequently, when the community is terminated, the employee’s spouse is entitled to be recognized as the owner of one-half of the value attributable to the pension or deferred compensation right earned during the existence of the community. Correla-tively, if part of the employee’s pension right was earned before or after the existence of the community, that part of the pension right must be classified as the employee’s separate property (or as property of a different marital regime) and separated from the community property interest to be divided.
Citations partially omitted.
As the quoted language reveals, retirement benefits may be characterized as partly separate and partly community property. Under the Hare analysis, that portion of the retirement benefits earned by Mr. Traylor prior to the marriage, and after the termination of the community property regime, are his separate property. However, that portion of his retirement benefits which are derived from his employment during the existence of the marriage is a community asset subject to partition. The fact that Mr. Traylor began working for the postal service prior to the marriage does not defeat the application of community property principles to the retirement benefits. Accord Inzinna v. Inzinna, 456 So.2d 691 (La.App. 5th Cir.), writ denied, 461 So.2d 317 (La.1984) (holding that a spouse’s military retirement benefits were community property, even though the employee spouse enlisted in the United States Air Force six years prior to the marriage). Accordingly, because we find that the retirement benefits are, at least in part, a community asset subject to partition, we reject Mr. Traylor’s assertion that Mrs. Traylor lacks the requisite ownership interest therein to entitle her to maintain this partition action.
FEDERAL LAW
We next address Mr. Traylor’s claim that Mrs. Traylor is precluded by preemptive federal law from bringing an action to partition his federal retirement benefits. Mr. Traylor points to the federal law in effect at *90 the time of the termination of the community, which precluded a non-employee spouse from demanding direct payment of a federal civil servant’s retirement proceeds from the federal government. Prior to 1978, payments under the federal civil service retirement system were not assignable or subject to other legal process. 5 U.S.C. § 8346(a). The Office of Personnel Management was precluded from complying with court orders that gave a non-employee spouse a direct right to recover retirement benefits from the employee spouse’s retirement fund. McCree v. McCree, 464 A.2d 922 (D.C.App.1983).
However, in 1978, the statutory scheme dealing with federal retirement benefits was amended. Public Law 96-366 added subsection (j) to 5 U.S.C. § 8345 to provide:
(j)(l) Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person.
5 U.S.C. § 8346(a) was correspondingly amended to provide for the exception to the anti-assignment provision created by the addition of subsection (j). In McDannell v. United States Office of Personnel Management, 716 F.2d 1063, 1065 (5th Cir.1983), the United States Fifth Circuit succinctly set forth the intent of Congress in amending the retirement law as follows:
... It was designed to carry out the belief that marriage is a partnership and that “each spouse makes a different, but an important, contribution and should have a legal right to a portion of the earnings of the other spouse,” a concept widely recognized by many states, most notably the community property states which include Texas. At the same time, the legislation seeks to defer to state courts, traditionally the arbiters in divorce proceedings, by allowing them to determine how the civil service benefits should be split between the couple.
The legislation made clear that state courts could, if they were so inclined, divide the retirement benefits between the divorcing spouses. Before its enactment, payments under the civil service retirement system were not assignable or subject to other legal process. Thus, the law was unclear as to whether state courts even had the power to divide these benefits in the face of the Supremacy Clause. The legislation exempted the division of civil service retirement benefits under § 8345(j) from the anti-assignment provision in § 8346(a), and made clear that federal law did not preempt state court property divisions of these benefits.
Citations omitted.
The ultimate purpose of the amendment was to allow the Office of Personnel Management to comply with the terms of a state court decree awarding a portion of a federal civil service pension to the pension recipient’s former spouse. McDannell v. United States Office of Personnel Management, 716 F.2d at 1066.
Mr. Traylor asserts that our courts are bound to apply federal law in existence in 1977, the time of the termination of the community. At that time, federal law prohibited Mrs. Traylor from asserting a direct ownership interest in the retirement benefits. He argues that as a result, Mrs. Traylor was prohibited from seeking a division of the retirement benefits in the state court system, and was instead relegated to seeking an accounting from the community’s contribution to the retirement system. Thus, he contends, even if the retirement benefits are classified as community property, Mrs. Tray-lor has no legal right to a partition of those benefits because of the application of federal law, and the trial court therefore properly maintained his exception of prescription.
We disagree. At least two courts, faced with similar arguments regarding the applicability of the amendments, have ruled that Congress intended the amendments to apply to court-ordered pension benefit payments after the effective date of the amendments, *91 irrespective of when the spouse’s entitlement to such benefits arose. In Hobbs v. United States Office of Personnel Management, 485 F.Supp. 456 (M.D.Fla.1980), the parties were legally divorced prior to the effective date of the amendments. The court’s divorce decree awarded the non-employee spouse 44% of the federal retirement pension and directed that such be paid directly to the former wife. The federal district court held that the amendments applied so as to authorize the Office of Personnel Management to make direct payments to the spouse. The court found that it was clearly the intent of Congress, as evidenced by Senate Committee Reports, that the amendments would apply to divorces taking place before the date of the enactment. However, the obligation of the Office of Personnel Management to make separate distributions is prospective only in the sense that the obligation did not arise until the amendments became effective.
Similarly, in McCree v. McCree, 464 A.2d 922 (D.C.App.1983), the court found that the legislative history demonstrated that Congress contemplated that the amendments would govern future payments under pensions that vested prior to the effective date, regardless of whether the pension rights vested or the divorce decree was entered prior to the effective date of the amendments. It ruled that Congress intended the amendments to have prospective effect only in the sense that they would govern pension benefit payments made after the effective date. In reaching this conclusion, the court also focused on the remedial purpose of the statute.
We agree with the Hobbs and McCree cases and hold that the amendments govern future payments of retirement benefits, regardless of when the spouse’s entitlement to such benefits arose. As any court-ordered distribution of the pension benefits in this case would clearly fall after the effective date of the amendments, the amendment authorizing the Office of Personnel Management to honor such a decree clearly applies, and the fact that the community was terminated pri- or to the effective date of the amendments is of no consequence.
CONCLUSION
For the foregoing reasons, we reject Mr. Traylor’s objection of prescription on the basis that Mrs. Traylor has no interest to or right in the retirement benefits. Mr. Tray-lor’s retirement benefits are, at least in part, a community asset subject to partition. Federal law does not preclude Mrs. Traylor from asserting a direct ownership interest in those benefits, and that law presents no impediment to the partition action. Therefore, we find that Mrs. Traylor has a right to maintain an action to partition the federal retirement benefits. Since the action for partition is imprescriptible, the trial court erred in granting Mr. Traylor’s exception of prescription. Accordingly, the peremptory exception raising the objection of prescription is hereby overruled. We remand this case to the trial court to conduct proceedings not inconsistent with this opinion. Costs of this appeal are assessed to defendant, Shelton Traylor.
REVERSED AND REMANDED.

. La.Civ.Code art. 2369 provides:
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime.
The obligation to account prescribes in three years from the date of termination of the community property regime.

. The trial court also rendered judgment granting plaintiffs reimbursement claims for amounts paid on the mortgage on the family home and improvements to the home. Neither party disputes this aspect of the judgment.